OPINION
{¶ 1} Defendant-appellant, Gerald L. Redmond, appeals a decision of the Madison County Court of Common Pleas, Juvenile Division, leaving visitation matters to the sole discretion of his 13-year-old son ("the child").
 {¶ 2} Appellant and appellee, Lori Lee Wilson, are the child's natural parents. The parties were never married. Wilson was granted custody of the child, and appellant was granted Sunday visitation. As the child got older, the parties extended appellant's visitation to weekend visitation. On June 25, 2000, appellant did not return the child to Wilson following visitation but instead kept him until September 6, 2000, when Wilson retrieved the child from a school where he had been enrolled. Appellant's actions were prompted by his belief that red marks on the child's back and buttocks were caused by Wilson's then boyfriend. The child was ten years old at the time.
 {¶ 3} On September 20, 2000, the trial court held an emergency hearing. During an in camera interview, the child told the trial judge that appellant had beaten him with a belt. On September 27, 2000, finding that the child was "in fear of being with his father for visitation, and that it could cause emotional harm to force visitation at this time[,]" the trial court suspended appellant's visitation privileges "until further order." The child subsequently spent a year in counseling to deal with his anger and nightmares.
 {¶ 4} In 2003, appellant filed a motion for visitation. During a hearing held in August 2003, appellant testified he missed his son greatly and that he had sent him 247 letters over three years. Appellant testified he just wanted to speak with his son and that he would be happy to start communicating with him by telephone. Appellant also testified he would agree to supervised visitation. Appellant denied ever hitting his son.
 {¶ 5} Wilson testified she did not want visitation to be reinstated because she feared it would result in counseling. Wilson stated she feared the physical abuse would happen again or that appellant would not return the child. According to Wilson, the child told her he did not want to see his father because of the past physical abuse.
 {¶ 6} During an in camera interview with the trial judge, the child stated that he did not want his father to have visitation because "he abused me. The way he treated me for the past years. His lying and the way he treats people." The child further stated that while he would probably read letters from appellant, he did not want phone calls even as a way to start out slow. Asked whether he would see appellant "if there was somebody like a caseworker present at all times," the child replied: "No, I wouldn't like that." The child also stated: "he can't change the past of what he's done, and for him I think it would be hard to like try to make it better because of the stuff he's done to me."
 {¶ 7} On August 14, 2003, based upon the in camera interview and the "prior history of the relationship between the [child] and his father," the trial court found that it was in the child's best interest "to leave the determination as to whether visitation should take place to [the child]." As a result, the trial court (1) ordered reasonable visitation to take place only if the child wished visitation, (2) allowed appellant to contact the child by phone call once a week or by letter, (3) granted the child the right to refuse the phone call, and (4) forbade Wilson and her husband from influencing the child or interfering with the child's letters or weekly phone call. Appellant now appeals, raising two assignments of error.
 {¶ 8} In his first assignment of error, appellant argues that the trial court abused its discretion by leaving the decision to visit appellant solely to the discretion of his son. Appellant contends that in light of his positive and great interaction with his other son and stepdaughters, it is in the child's best interest to have forced visitation.
 {¶ 9} A trial court is vested with broad discretion in determining the visitation rights of a noncustodial parent.Appleby v. Appleby (1986), 24 Ohio St.3d 39, 41. Accordingly, while a trial court's decision with respect to visitation must be just, reasonable, and consistent with the best interest of the child, an appellate court must review a trial court's decision with respect to visitation with deference and will reverse it only if the trial court abused its discretion. King v. King
(1992), 78 Ohio App.3d 599, 602; In re Nichols (June 8, 1998), Clermont App. No. CA97-11-102.
 {¶ 10} A noncustodial parent's right of visitation is a natural right and should be denied only under extraordinary circumstances, including unfitness of the noncustodial parent or a showing that visitation with the noncustodial parent would cause serious emotional or physical harm to the child. Pettry v.Pettry (1984), 20 Ohio App.3d 350, 352; Johntonny v. Malliski
(1990), 67 Ohio App.3d 709, 712-713. Visitation privileges of the noncustodial parent may be denied if the child is unwilling to see the noncustodial parent and no useful purpose would be served by forcing visitation. Pettry at 352; In re Lamb (Feb. 12, 1996), Butler App. No. CA95-01-006. However, until a child can affirmatively and independently decide not to have any visitation with the noncustodial parent, the relationship between the child and the noncustodial parent should not be totally severed. SeeSmith v. Smith (1980), 70 Ohio App.2d 87.
 {¶ 11} As a result of appellant's failure to return the child for over two months in 2000 and the child's statements to the trial judge in an in camera interview in 2000 that appellant beat him with a belt, appellant's visitation rights were suspended. Appellant's actions caused the child to be in counseling for a year. During the August 8, 2003 hearing, the trial court heard the testimony of several witnesses, including appellant, and personally discussed the issue of visitation with the child during an in camera interview. The child clearly stated he did not want to have visitation with his father, even if a person was present at all times, because of appellant's previous abuse and treatment of him. The child was also unwilling to start visitation with phone calls.
 {¶ 12} At the 2003 hearing, the child was almost fourteen years old. Age is certainly a consideration in determining when a minor's reluctance in visiting the noncustodial parent is enough to prevent visitation. See Smith. R.C. 3109.051(D)[1]
requires a trial court to consider the wishes and age of a child in determining whether to modify visitation. During the in camera interview, the child affirmatively and independently stated he did not want to have any visitation with his father. The trial judge, who was familiar with the parties' history, was also in the best position to consider and evaluate the genuineness of the child's statements and unwillingness to visit his father. We believe that based on the record in this case, it would not be in the child's best interest to force him to visit his father.
 {¶ 13} We therefore find that while it is regrettable the child has no desire to visit his father, the trial court did not abuse its discretion by leaving visitation matters solely to the discretion of the child. Appellant's first assignment of error is overruled.
 {¶ 14} In his second assignment of error, appellant argues that the trial court erred by denying his motion to continue the hearing to allow his attorney to subpoena critical witnesses, in particular his former wife with whom he shares custody of their son Joshua.
 {¶ 15} Before the hearing started, appellant's attorney informed the trial court that although appellant had faxed her three weeks earlier the names and addresses of witnesses to subpoena, she had never received the facsimile. There is no evidence in the record that appellant followed up to verify his attorney had received the facsimile. As a result, witnesses such as appellant's former wife were not subpoenaed and were not present at the hearing. Appellant's attorney contended that appellant's former wife would bolster his credibility. Wilson opposed the motion on the ground that she would be greatly inconvenienced by a continuance as she had taken time off work and hired a babysitter for her infant son Titus. The trial court subsequently denied appellant's motion.
 {¶ 16} A trial court has broad discretion when determining whether to grant or deny a motion for a continuance. State v.Unger (1981), 67 Ohio St.2d 65, 67. Absent an abuse of discretion, a trial court's denial of a motion for continuance will not be reversed. Id. In ruling upon a motion for a continuance, "the trial court balances the court's interest in controlling its docket and the public's interest in an efficient judicial system with the possibility of prejudice to the defendant." In re Eskins (July 13, 1998), Butler App. No. CA97-10-199, at 3-4. The trial court may consider factors such as the length of the delay requested, prior requests for continuances, the inconvenience to the parties, witnesses, counsel, and the court, whether the movant contributed to the circumstances giving rise to the request for a continuance, and other relevant factors depending on the facts of the case. Statev. Landrum (1990), 53 Ohio St.3d 107, 115.
 {¶ 17} Upon reviewing the record, we note that appellant and his attorney were present at a pre-trial hearing on June 13, 2003. By entry filed on June 27, 2003, the trial court scheduled the hearing on appellant's motion for visitation for August 8, 2003. Appellant and his attorney certainly had the opportunity during this lapse of time to discuss the presence of critical witnesses at the hearing. There is no evidence appellant made sure his attorney had received his facsimile. Likewise, there is no evidence appellant's attorney inquired about the names and addresses of these allegedly critical witnesses before the hearing.
 {¶ 18} The record shows that appellant testified at the hearing how he had been successfully sharing the custody of his son Joshua with his former wife under a shared parenting plan for the past four years. His testimony was bolstered by the testimony of his current wife who stated that there were no problems between appellant and his former wife as to the custody of their son Joshua. The record also shows that the inconvenience to the parties, counsel, and the court would have been significant if a continuance would have been granted. The trial judge, the parties' attorneys, witnesses for both parties, and Wilson, who had to take off work and arrange for a babysitter in order to attend the hearing, were present and prepared to proceed with the scheduled hearing.
 {¶ 19} In light of the foregoing, we find that the trial court did not abuse its discretion by denying appellant's motion for a continuance. Appellant's second assignment of error is overruled.
Judgment affirmed.
Powell and Walsh, JJ., concur.
[1] Contrary to Wilson's assertion, R.C. 3109.051, not R.C.3109.04(F), applies to a modification of visitation, as in this case. See Braatz v. Braatz, 85 Ohio St.3d 40, 1999-Ohio-203, paragraph one of the syllabus; Moore v. Moore (Dec. 29, 1997), Madison App. No. CA97-04-016.