OPINION
{¶ 1} Appellant, Angelica Bixler, nka Kaufman ("Appellant"), appeals the judgments of the Seneca County Court of Common Pleas, Juvenile Division, that denied Appellant's motion for expanded visitation with her children, J.S. and E.B., that denied Appellant's motion for legal custody of E.B., that granted legal custody of E.B. to Aaron and Robin Fox ("Foxes") and that granted Appellee, Seneca County Department of Job and Family Services' ("SCDJFS") motion to terminate its protective supervision for both J.S. and E.B. On appeal, Appellant asserts that the trial court erred in denying her motion for expanded visitation for both J.S. and E.B.; that the trial court erred in denying her motion for legal custody of E.B. and in granting legal custody of E.B. to the Foxes; and, that the trial court erred in granting SCDJFS's motion to terminate protective supervision for both J.S. and E.B. Finding that the trial court did not abuse its discretion, we affirm the judgments of the trial court.
 {¶ 2} Appellant is the biological mother of E.B. and J.S.E.B. was born October 28, 2001, and J.S. was born July 1, 2003. E.B. and J.S. are half brothers. J.S.'s biological father is Appellee, Steve Smith, and E.B.'s biological father is unknown. Appellant and Smith were never married.
 {¶ 3} In July of 2003, SCDJFS filed two complaints alleging that E.B. and J.S. were both dependant children pursuant to R.C.2151.04(C). The children were placed in foster care pursuant to Appellant and Smith's approval. Both Appellant and Smith were given visitation with the children while they were in foster care.
 {¶ 4} In April of 2004, SCDJFS filed a motion to place both children in the temporary custody of the Foxes. Aaron Fox was the brother of Kenneth Kaufman, Appellant's husband during this time and the father of Appellant's third child, D.K. Subsequently, the Foxes were granted temporary custody of the children. Appellant was also granted supervised visitation with her children.
 {¶ 5} In June of 2004, Smith was granted temporary custody of J.S. Additionally, Appellant's visitation was expanded and was to be exercised at the discretion of SCDJFS.
 {¶ 6} In October of 2004, the trial court granted SCDJFS' emergency order to suspend Appellant's visitation with both children based upon an allegation of abuse of J.S. Additionally, SCDJFS amended its complaint for J.S. to have him designated an abused child.
 {¶ 7} In January of 2005, an adjudication hearing was held. At the hearing, Deputy Roy Sargent, a Putnam County Sheriff's Deputy, testified about the alleged abuse of J.S. The alleged abuse of J.S. was based upon bruising on his buttocks, which was found after an unsupervised visit with Appellant. According to Sargent, Appellant had told him that her husband, Kenneth Kaufman, may have spanked J.S., causing the bruising. Sargent stated that she told him she did not know what had happened for sure because she was not home at the time.
 {¶ 8} During the adjudication hearing, both Appellant and Smith agreed on the record that J.S. was an abused child pursuant to R.C. 2151.031(C). Additionally, Appellant agreed on the record that E.B. was a dependant child pursuant to R.C. 2151.04(C). Additionally, the trial court granted legal custody of J.S. to Smith at this time. Appellant was granted supervised visitation with both children for one hour a week.
 {¶ 9} Subsequently, SCDJFS filed a motion to terminate protective supervision of J.S. and to have the Foxes designated E.B.'s legal custodian. In October of 2005, a hearing was held. At that hearing, Appellant made an oral motion for legal custody of E.B. and for greater visitation with both children. At the hearing, the testimony of Tracey Kohls, a Putnam County Jobs and Family Services wraparound coordinator, Robin Fox, Kent Nord, the children's guardian ad litem, and Erin Tea, Appellant's social worker, was presented.
 {¶ 10} First, Tracey Kohls testified that she was a wraparound coordinator that had been working with Appellant for services in Putnam County. According to Kohls, she had been working with Appellant for approximately two and one half months. She stated during that time, she had been to Appellant's house and that it had been clean and safe. Additionally, Kohls stated that she had observed Appellant with her third child, D.K., and that Appellant was meeting D.K.'s basic needs. Kohls acknowledged that she had not witnessed Appellant with either J.S. or E.B., but stated she was satisfied that Appellant was meeting D.K.'s basic needs.
 {¶ 11} Robin Fox testified that she and her husband were the temporary custodians of E.B., and that they would like to receive legal custody of him. She stated that while E.B. was developmentally delayed when he came to live with her and her husband, he had made substantial improvements since he had been living with them. Robin went on to state that she objected to unsupervised visitation with Appellant, based upon comments E.B. had made after coming back from his visits with his mother.
 {¶ 12} Robin also testified that E.B. had been picked up by the police while her daughter was babysitting him, because he had gotten out of the house and was missing. Robin stated that SCDJFS had investigated the incident and that nothing came of the investigation. Finally, Robin stated that her husband, Aaron, was Kenneth Kaufman's brother, and that Kenneth Kaufman was a registered sex offender. She stated that she did not allow Kaufman to have visitation with E.B.; however, Kaufman had been at her in-laws' house one day while they were visiting.
 {¶ 13} Next, Kent Nord, the children's guardian ad litem, testified. According to Nord, it was in the children's best interest to grant legal custody of E.B. to the Foxes, to maintain the current supervised visitation schedule for Appellant and to continue protective supervision by SCDJFS. Nord acknowledged that Appellant had maintained a stable residence and employment for over a year. Additionally, he stated that she had physically completed the case plan that had been put in place by SCDJFS. However, Nord was concerned with Appellant's track record with men, which included a thirty-nine year old man named Shelton that was living in her apartment and had a criminal record. He stated that since he had been involved with her case several different men had come in and out of Appellant's life and that he did not think Appellant made good decisions regarding her children. Additionally, Nord stated that Appellant's mental health was a factor for him, and that Appellant seemed to change her stories about things to fit her needs.
 {¶ 14} Finally, Erin Tea, a social worker, testified. Tea acknowledged that Appellant had physically completed everything in the case plan that had been put into place by SCDJFS. However, according to Tea, Appellant had not implemented what she had been taught with the case plan. Specifically, Tea stated that during Appellant's visits with the children Appellant would get stressed and did not seem to know how to deal with the children. Tea testified that it was clear to her that Appellant was not able to apply what she was learning in her parenting classes and other parts of the case plan.
 {¶ 15} Tea also disagreed with Kohls assessment of Appellant's apartment. According to Tea, the last time she had been to Appellant's apartment it would not have passed a health and safety check. Additionally, D.K. was in his playpen with a full diaper, and both Appellant and Shelton appeared to be asleep when she got to the apartment in the late morning. Tea went on to state that she does not believe that Appellant should have custody of D.K. Further, Tea stated that Appellant had been involved in several unhealthy relationships since she had been working with her. Tea also stated that while she had maintained housing and employment, which did show stability, she had people coming in and out of her life, showing instability.
 {¶ 16} Upon review of the evidence presented, the juvenile court denied Appellant's motion for legal custody of E.B, granted legal custody of E.B. to the Foxes, denied Appellant's motion for expanded visitation with both J.S. and E.B., and granted SCDJFS' motion to terminate its protective supervision for both J.S. and E.B. It is from this judgment Appellant appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN BY (sic.)DENYING THE APPELLANT'S MOTION FOR EXPANDED VISITATION RIGHTS.
 Assignment of Error No. II THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN BY (sic.)DENYING THE APPELLANT'S MOTION FOR LEGAL CUSTODY OF [E.B.]
 Assignment of Error No. III THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN BY (sic.)GRANTING LEGAL CUSTODY OF [E.B.] TO AARON AND ROBIN FOX.
 Assignment of Error No. IV THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN BY (sic.)GRANTING THE APPELLEE SENECA COUNTY DEPARTMENT OF JOBS AND FAMILYSERVICES MOTION TO TERMINATE PROTECTIVE SUPERVISION.
 {¶ 17} Due to the nature of the assignments of error, we elect to address them out of order.
 Assignment of Error No. IV {¶ 18} In the fourth assignment of error, Appellant asserts that the juvenile court erred by granting SCDJFS' motion to terminate protective services. Specifically, Appellant argues that the trial court's grant of SDCJFS' motion to terminate protective services for both E.B. and J.S. effectively cut off her rights to her children. We disagree.
 {¶ 19} Initially we note that this is not a case involving permanent custody of either E.B. or J.S. Rather, the juvenile court herein granted only legal custody of the children.
 {¶ 20} R.C. 2151.011(B)(30) defines "permanent custody" as "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, anddivests the natural parents or adoptive parents of all parentalrights, privileges, and obligations, including all residualrights and obligations." (Emphasis added.) Conversely, R.C.2151.011(B)(19) defines "legal custody" as "a legal status that vests in the custodian the right to have physical care andcontrol of the child and to determine where and with whom thechild shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residualparental rights, privileges, and responsibilities." (Emphasis added.)
 {¶ 21} As recently pointed out by the Ohio Supreme Court inIn re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17, "[t]he important distinction is that an award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities. In the future, then, in this case, either parent may petition the court for a modification of custody." (Citations omitted.) Accordingly, Appellant's fourth assignment of error is without merit.
 Assignments of Error Nos. II III {¶ 22} In the second assignment of error, Appellant asserts that the juvenile court erred in denying her motion for legal custody of E.B. In the third assignment of error, Appellant asserts that the juvenile court erred in granting legal custody of E.B. to the Foxes. Because these assignments of error are interrelated, we will address them together.
 {¶ 23} As noted above, E.B. was adjudicated dependent. Once a child is adjudicated abused, neglected or dependent, a juvenile court may award legal custody of the child to any parent or person who files a motion requesting legal custody. R.C.2151.353(A)(3). In determining whether to grant legal custody to the parent or movant, the court must comply with R.C. 2151.42, which requires the court to consider the best interest of the child in making the custody determination. R.C. 2151.42(A).
 {¶ 24} On appeal, we will not reverse an award of legal custody absent an abuse of discretion. In re Nice (2001),141 Ohio App.3d 445, 455. Abuse of discretion connotes more than an error of law or judgment. Rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. "`[L]egal custody where parental rights are not terminated is not as drastic a remedy as permanent custody.'" In re A.W.G., 12th Dist. No. CA2003-04-099, 2004-Ohio-2298, at ¶ 7, quoting Nice,141 Ohio App.3d at 455. Therefore, the trial court's standard of review in legal custody proceedings is not clear and convincing evidence, as it is in permanent custody proceedings, but is merely a preponderance of the evidence. Nice,141 Ohio App.3d at 455. "Preponderance of the evidence" means "evidence that's more probable, more persuasive or of greater probative value."State v. Finkes 10th Dist. No. 01AP-310, 2002-Ohio-1439.
 {¶ 25} In the case sub judice, Appellant specifically argues that because she completed the case plan and had maintained employment and housing that the juvenile court abused its discretion in denying her motion for legal custody of E.B. and in granting legal custody of E.B. to the Foxes. Upon review of the evidence, we find that the juvenile court clearly considered these issues in making a best interest determination.[1]
 {¶ 26} In the juvenile court's judgment entry, the court went through a seventeen page analysis to determine what was in E.B.'s best interests. Specifically, the juvenile court found that E.B. was getting along well with the Foxes and that Robin Fox had stated she would keep E.B. until he was eighteen. Additionally, the juvenile court found the Foxes did not suffer any disabilities and had not been convicted of any crimes. Regarding the Appellant, the juvenile court acknowledged that Appellant had completed the case plan, but that she had "not demonstrated an application of those skills." (J.E. p. 29.) The juvenile court went on to acknowledge that Appellant had maintained housing and employment, but found that she had "not demonstrated stability with her adult relationships." Id. Finally, the juvenile court specifically noted that Nord, the guardian ad litem, and Tea believed it was in E.B.'s best interest to grant legal custody of E.B. to the Foxes and to continue supervised visitation with Appellant.
 {¶ 27} Based upon these, in addition to other findings, the juvenile court found by clear and convincing evidence that it was in E.B.'s best interest to grant legal custody to the Foxes. Upon review of the record, we cannot find that the juvenile court abused its discretion. Additionally, all the findings made by the juvenile court are clearly supported by the record. Accordingly, the second and third assignments of error are overruled.
 Assignment of Error No. I {¶ 28} In the first assignment of error, Appellant asserts that the juvenile court erred in denying her motion for expanded visitation. Again, Appellant asserts that the juvenile court abused its discretion.
 {¶ 29} Juvenile courts are vested with broad discretion in determining the visitation rights of a noncustodial parent.Wilson v. Redmond, 12th Dist. No. CA2003-09-033,2004-Ohio-3910, at ¶ 9, citing Appleby v. Appleby (1986),24 Ohio St.3d 39, 41. "Accordingly, while a trial court's decision with respect to visitation must be just, reasonable, and consistent with the best interest of the child, an appellate court must review a trial court's decision with respect to visitation with deference and will reverse it only if the trial court abused its discretion." Wilson at ¶ 9, citing King v.King (1992), 78 Ohio App.3d 599, 602; overruled on other grounds as recognized in Baker v. Baker (Jan. 19, 1996), 3rd Dist. No. 13-95-36. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable.Blakemore, 5 Ohio St.3d at 219. Where "there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." Van Vorce v. Van Vorce, 3rd Dist. No. 2-04-11, 2004-Ohio-5646, at ¶ 15, citing Kramer v. Kramer, 3d Dist. No. 13-02-03, 2002-Ohio-4383 at ¶ 11, citing Ross v. Ross
(1980), 64 Ohio St.2d 203, 208.
 {¶ 30} A noncustodial parent's right of visitation is a natural right and should be denied only under extraordinary circumstances. Pettry v. Pettry (1984), 20 Ohio App.3d 350,352. The party contesting the visitation has the burden of proving by clear and convincing evidence that such an extraordinary circumstance exists. Hoppel v. Hoppel, 7th Dist. No. 03 CO 56, 2004-Ohio-1574, at ¶ 44, citing Pettry,
20 Ohio App.3d at paragraph one of the syllabus.
 {¶ 31} In the case sub judice, Appellant has not been completely denied visitation with either E.B. or J.S. As noted above, after the children were originally removed from her custody, she and Smith were granted supervised visitation. Subsequently, Appellant was granted unsupervised visitation with the children; however, unsupervised visitation was ended following the alleged abuse of J.S. Appellant never denied that abuse had taken place, during her visit with J.S. Additionally, she agreed to have J.S. adjudicated an abused child during the January 2005 hearing. Appellant was then granted supervised visitation with the children of one hour per week.
 {¶ 32} In October of 2005, Appellant requested expanded visitation with her children during the adjudication hearing. Following the presentation of the evidence, the juvenile court denied Appellant's motion for expanded visitation, finding it was in the children's best interests to maintain the current supervised visitation with Appellant of one hour per week.
 {¶ 33} Upon review of the evidence, we cannot find that the trial court abused its discretion in making this determination. Again, both Nord and Tea testified that it was not in the children's best interests to grant Appellant's motion for expanded visitation. Both Nord and Tea testified that supervised visitation should continue. Nord did testify that Appellant was making progress; however, he and Tea both testified that she still was not demonstrating she was learning from her case plan.
 {¶ 34} Because we cannot find that the juvenile court abused its discretion in denying Appellant's motion for greater visitation, the first assignment of error is overruled.
 {¶ 35} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 Bryant, P.J., and Cupp, J., concur.
[1] We note that the trial court relied upon R.C. 3109.04 to make its best interest determination. While R.C. 3109.04 is found within Title 31, the Domestic Relations section of the Revised Code, we find that section to be sufficient to make a best interest determination herein because Title 21, the Probate and Juvenile section of Revised Code, contains no definitive standard.