[Cite as *Garrett v. Garrett*, 2016-Ohio-262.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

|                        |   |                          |
|------------------------|---|--------------------------|
| BRIAN GARRETT,         | : |                          |
|                        |   | CASE NO. CA2015-09-024   |
| Plaintiff-Appellee,    | : |                          |
|                        |   | O P I N I O N            |
|                        | : | 1/25/2016                |
| - vs -                 |   |                          |
|                        | : |                          |
| KARINA GARRETT,        | : |                          |
|                        |   |                          |
| Defendant-Appellant.   | : |                          |

APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DRB20140094

J. Michael Murray, 8 East Main Street, West Jefferson, Ohio 43162, for plaintiff-appellee

John C.A. Juergens, 1504 North Limestone Street, Springfield, Ohio 45503, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Karina R. Garrett, appeals from the decision of the Madison County Court of Common Pleas, Domestic Relations Division, following her divorce from plaintiff-appellee, Brian E. Garrett. For the reasons outlined below, we affirm.[1]

{¶ 2} Brian and Karina were married on May 24, 2008. However, after being married

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.

for six years, Brian filed for divorce on July 15, 2014, with Karina also filing for divorce three days later on July 18, 2014. The trial court then consolidated the two cases and scheduled a hearing before a magistrate for November 17, 2014.

{¶ 3} On November 6, 2014, nine days before the scheduled hearing, Karina filed a motion requesting approval to conduct an appraisal of a disputed piece of real property located at 5275 Old Springfield Road, London, Madison County, Ohio. Karina also filed a motion for a continuance to allow additional time to receive and review "requested documents regarding the parties [sic] real property." The trial court granted both of Karina's motions on November 13, 2014 and rescheduled the hearing before the magistrate for December 18, 2014. Karina, however, never had the property appraised.

{¶ 4} At the start of the December 18, 2014 hearing, Karina moved the trial court for another continuance to allow her to conduct an appraisal on the disputed property. In support of this motion, Karina's trial counsel claimed he had sent a letter and made several telephone calls and faxes to Brian's trial counsel providing him with the name of an appraiser "and a request that [Brian] contact or someone contact him to set things up," all of which were ignored. Brian's trial counsel, however, denied ever receiving any such correspondence. Rather, Brian's trial counsel stated:

> I called [Karina's trial counsel] a little over a week ago, on a Friday, because I hadn't heard from his office regarding an appraisal, exchange of documents or otherwise. At that point in time, he indicated that he hadn't received documents, that an appraisal hadn't been done. He did indicate at that time he thought that he had sent a letter to me. A letter was not received by me.

{¶ 5} Continuing, Brian's trial counsel then stated he previously received a telephone call from Karina's trial counsel's secretary requesting a copy of the appraisal that Brian had procured from Timothy Beathard on October 22, 2014. In response, Brian's trial counsel claimed he told "the secretary at that time that it was my understanding they were going to

have their own appraisal done, we would, in accordance with local custom, exchange * * * written appraisals at that time." Brian's trial counsel then stated:

> The only contact I had from [Karina's trial counsel] from that two weeks prior to that Friday was me calling him on that Friday and the conversation I – he did call me on Tuesday, thanked me for delivering the documents on Monday. Indicated he had had a conversation with his client and indicated she wanted to have somebody come out and ascertain * * * whether or not the construction on the home was completed and/or if [Brian] was living there, things of that nature. He provided me of a name of a Tony Tucker, I believe, and phone number.

{¶ 6} To this, Brian's trial counsel claimed he called Brian and told him that "they wanted to have this individual come out. Here's the telephone number, call them – call him and see if he can come out tomorrow." According to Brian's trial counsel, Brian then called the telephone number provided and left a message with Tucker's office. However, after waiting for Tucker to arrive at the disputed property, Tucker "did not show and here we sit." The magistrate subsequently denied Karina's motion for a continuance "[b]ased on representations of counsel this morning and the characterization of the way this has played out[.]"

{¶ 7} After denying Karina's motion to continue, Beathard was called to the stand to testify regarding the disputed property. Beathard, a licensed appraiser for over 35 years, testified he originally appraised the disputed property on January 25, 2013 for $55,000. However, now that a house had been partially constructed on the property, Beathard testified he appraised the property for $190,390. It is undisputed that at the time of the hearing, the disputed property was encumbered by a construction loan with an outstanding balance of $75,950.29.

{¶ 8} Ada Garrett, Brian's grandmother, also testified regarding the disputed property. Ada testified she purchased 17 acres of real property in the fall of 2012. Ada then testified she gave 8.6777 acres of the property to Brian so that he could build a house on the property

with his parents, Rex and Rebecca Garrett. In order to effectuate this transaction, Ada testified she entered into an agreement with Brian where he would purchase the property for $38,793.78, money that she would then give back to Brian so that he could obtain a construction loan.

{¶ 9} Once the sale of the property was complete, Ada testified she and Brian jointly applied for and received a loan from Farm Credit Mid-America to finance the construction of a home on the property. Ada further testified that she and Brian then entered into a lease agreement with Peart Farms, wherein the Peart family agreed to farm four acres of the property she had given to Brian at an annual cost of $130 per acre. After entering into the lease agreement, Ada testified she and Brian agreed that she would keep the rental income in order to recoup the purchase price of the property. When asked if it was ever her intent for Karina to receive any benefit from any of these transactions, Ada testified "No." Ada also specifically testified that the property was "a gift to Brian."

{¶ 10} Rex Garrett, Brian's father, then testified. Rex testified he was aware of the transactions between Ada and Brian since he had been involved in "every stage" of the deal. To that end, Rex testified Ada "purchased the land to split it for Brian's building a house." After purchasing the property, Rex testified he played a significant role in the planning and construction of the house. Specifically, Rex testified that he and his wife Rebecca worked full-time nearly seven days a week constructing the house for their son. As Rex testified, this served as a "learning experience" for Brian and a "right of passage" in the Garrett family since Rex's father had also built a house for him. Nevertheless, while Brian helped out with some of the "heavy lifting," Rex testified Karina was "very inexperienced" and served merely as a "helping hand," a "gopher, basically. Go for this, go for that." Rex also testified the house was a gift to Brian that was not intended to benefit Karina in any way.

{¶ 11} Rebecca Garrett, Brian's mother, also testified. Rebecca testified that she was

also aware of the transactions between Ada and Brian, having been present at "every transaction." Karina, however, had "no part" in the purchase of the disputed property having "said she wanted no part of [any benefits from the house] from the beginning." Instead, Rebecca testified the house was intended to be a gift to Brian alone and Karina was "not to have any of it, no." Thereafter, when asked to explain the intent behind the purchase of the property and construction of the house, Rebecca testified it was to teach Brian "[h]ow to build a house that, you know, our son could have and to teach him, you know, how to build a house so that one day when he would build a house for his child, he would know how to do it." Rebecca further testified that Karina "contributed absolutely nothing to the house at all in any way" and served merely a "gopher, just somebody to do the menial stuff."

{¶ 12} Brian testified that he and his grandmother, Ada, agreed that "she would buy the 17 acres and then we would split it up amongst me and her. It was for me." Brian then testified that he and Ada jointly applied for a loan from Farm Credit Mid-America to finance the construction of a house on the disputed property. Karina, however, played absolutely no role in any of these transactions. When asked why Karina was not included in these transactions, Brian testified that it was due to his concerns regarding their marriage and because "my mother and my father wanted to build a house for me like his grandfather did and they wanted me to be close to them and grandmother wanted to be close to them." Brian then testified that it was his understanding that the house "would be [his] as a gift. Their work was a gift," and that, "if it wouldn't have been for [his parents], this wouldn't have been possible."

{¶ 13} Karina also testified. She indicated that she should be awarded the washer and dryer, king size bed, theatre chairs, decorations, and storage tote containing awards she had earned in high school. Karina also testified that she should be awarded one half of the difference between the appraised value of the disputed property and the outstanding balance

of the construction loan. In support of this claim, Karina testified that she contributed to the property by making payments on the property and by purchasing materials for the property.

{¶ 14} Karina also testified that she contributed significantly to the physical construction of the house on the property. For instance, Karina testified she helped lay the foundation, nailed down floorboards and hung drywall. Karina also testified that she would oftentimes work on the house at night when no one else was there. According to Karina, this caused her to get "blisters on [her] hands from working so hard on the house." However, Karina also testified that she was a "gopher" in that she "was constantly the one that they were sending out to go get stuff." Karina's sister further testified that Karina had told her she had been working on the house "at least three days a week, if not more," and on the weekends.

{¶ 15} Following this testimony, both parties filed post-hearing briefs. The magistrate then took the matter under advisement, ultimately issuing its decision on February 20, 2015. As relevant here, the magistrate awarded Karina her grandmother's mirror and found the disputed real property was a gift to Brian from his grandmother, Ada, which constituted his separate property. The magistrate also found that any appreciation in the property value was Brian's separate property since the "time and labor expended by Rex and Rebecca Garrett was clearly intended to be a gift for their son only." In so holding, the magistrate determined that Karina's testimony on these issues lacked "both credibility given the totality of the circumstances as well as corroboration."

{¶ 16} On March 6, 2015, Karina filed six objections to the magistrate's decision, wherein she asserted the following:

> 1. Defendant states that Magistrate Kimmel erred in finding that the parties' real property situated at 5275 Old Springfield Road, London, Ohio was a gift to the Plaintiff and thus his separate property.
>
> 2. Defendant states that Magistrate Kimmel further erred in

finding that clear and convincing evidence was established to support the Plaintiff's claim that the parties' aforementioned real property was Plaintiff's separate property.

3. Defendant states that Magistrate Kimmel further erred in that, after Her Decision finding the aforementioned real property to be Plaintiff's separate property, further finding that Defendant was not entitled to any of the real property's appreciated value.

4. Defendant states that Magistrate Kimmel further erred by not granting Defendant's second Motion for Continuance for the purpose of acquiring a separate and independent appraisal of the parties' aforementioned real property.

5. Defendant states that Magistrate Kimmel further erred by not fairly dividing the parties' property * * * [because she was only awarded] her grandmother's mirror even though [she] did provide an itemized list to the Court indicating items she wanted that included personal property, to wit: a washer and dryer, a king size bed, theater chairs, and decorations, as well as personal items including a storage tote with awards that [she] earned in High School. None of these items were disputed by Plaintiff at trial.

6. Defendant lastly states that Magistrate Kimmel further erred by copying and pasting Plaintiff's Findings of Facts and Conclusions of Law into Her Decision instead of performing an independent analysis.

The trial court subsequently issued its decision on Karina's six objections to the magistrate's decision on April 22, 2015.

{¶ 17} Initially, as it relates to Karina's first and second objections to the magistrate's decision classifying the disputed property as Brian's separate property, the trial court determined that the "evidence revealed through testimony that Ada Garrett intended the property to be a gift to her grandson, Brian Garrett." The trial court also determined that the "documents submitted as exhibits reflect virtually no involvement by Defendant in the purchase of or financing of the property and strongly support the Plaintiff's assertion that the property was intended to be a gift for Brian Garrett and Brian Garrett alone." Therefore, after undertaking an independent review of the magistrate's decision, the trial court determined that it could not "say that the Magistrate's Decision to treat the Old Springfield Road property

as separate rather than marital property was contrary to law," nor could it "say that said finding was an abuse of discretion."

{¶ 18} Nevertheless, in remanding the matter back to the magistrate for further proceedings, the trial court found:

> [T]he Court notes that the parties agreed through the testimony that at the time of the hearing the outstanding principal on the loan was $75,950.29. The testimony of the Plaintiff indicated that he and he alone was making payments on the outstanding principal. This fact was disputed by the Defendant in that she claimed to have given cash to the Plaintiff to make payments when he was unable to. The Court does not believe it is necessary to resolve this factual dispute because the record strongly suggests that the loan was originated during the course of the marriage and any payments that were made up to the date of divorce were being paid out of marital assets. Therefore, it is the judgment of the Court that the Defendant is entitled to 50% equity in any payments the Plaintiff has made on the Farm Credit loan up to the date of the divorce. The Farm Credit loan was specifically for the purchase of the property and the building of the residence and any payments made against the loan during the course of the marriage should be deducted from the Plaintiff's equity in said property thereafter being divided in half with the Plaintiff receiving credit for one half and Defendant receiving credit for one half.

{¶ 19} Next, as it relates to Karina's third objection to the magistrate's decision, the trial court determined that she was not entitled to any appreciation in the value of the disputed property. In so holding, the trial court concluded that "[a]n independent review of the transcript fairly reflects that any skilled labor that meaningfully was performed on the property resulting in any appreciation of the property was performed by the Plaintiff's parents." The trial court also found that any contributions to the physical construction of the house on the disputed property by Brian and Karina "can be fairly characterized as minimal," thereby making it impossible to determine if their labor resulted in any appreciation to the property, and if so, what percentage of the appreciation could be attributed to their labor "as opposed to the Plaintiff's parents which was clearly intended to be a gift to the Plaintiff as per their testimony."

**{¶ 20}** In addition, as it relates to Karina's fourth objection to the magistrate's decision denying her request for a second continuance in order to obtain a "second and independent appraisal" of the disputed property, the trial court found no error in the magistrate's decision. In so holding, the trial court found that there was "nothing in the record that significantly in any way suggests that the appraisal that was received in testimony was not reliable." The trial court then went on to state the following:

> The Defendant asserts that a request for an independent appraisal had been made, indeed the record reflects that a request was made to that effect. The record additionally reflects that the hearing for final divorce was originally set on November 17, 2014 and was specifically continued for the purpose of allowing the Defendant to obtain an additional appraisal. There is no indication in the Court's file of any difficulty accessing the property, or in any other way obtaining the appraisal that the original continuance had been granted to acquire. Rather, the first time the Court file reflects an issue regarding the ability to get said appraisal is on the actual date of the final divorce hearing on December 18, 2014. If the parties, specifically the Defendant, were running into road blocks in their ability to obtain the appraisal which the Court had authorized it would have been appropriate some time before the day of the final hearing to raise the issue with the Court, preferably by motion. By waiting until the morning of the final divorce hearing to raise the issue, the Court finds that it is unreasonable on the Defendant's part to assert that the Court made a decision contrary to law or abused its discretion in overruling a Motion to Continue a hearing that had been set for a month.

**{¶ 21}** Furthermore, as it relates to Karina's fifth objection to the magistrate's decision claiming the magistrate erred by not fairly dividing the parties' property, the trial court sustained the objection finding Karina was entitled to all of the requested items since none of the items were in dispute. Specifically, the trial court found Karina was entitled to the washer and dryer, king size bed, theatre chairs, decorations, and storage tote containing awards she had earned in high school.

**{¶ 22}** Finally, as it relates to Karina's sixth objection claiming the magistrate erred by merely copying and pasting the proposed findings and conclusions of law from Brian's post-

hearing brief into its own decision instead of conducting an independent analysis of the issues, the trial court found this "broad assumption" was without merit and "unsupported by any evidence" within the record.

{¶ 23} As a result of the trial court's decision, the matter was remanded back to the magistrate for further proceedings with respect to the payments made on the loan from Farm Credit Mid-America. Specifically, the trial court ordered the magistrate to "determine what was paid against that loan with marital assets and make an appropriate equitable distribution." After holding a hearing on the matter, the magistrate found the payments made on the loan totaled $7,943.44, thus entitling Karina to $3,971.72 representing her one-half share of the marital funds used to pay down the loan. The trial court then issued a final divorce decree incorporating its findings and granting the parties' divorce on August 27, 2015

{¶ 24} Karina now appeals from the trial court's decision, raising six assignments of error for review. For ease of discussion, Karina's first and second assignments of error will be addressed together.

{¶ 25} Assignment of Error No. 1:

{¶ 26} THE TRIAL COURT ERRED TO FIND THAT THE REAL PROPERTY SITUATED AT 5275 OLD SPRINGFIELD ROAD IN LONDON, OHIO WAS A GIFT TO PLAINTIFF AND WAS THUS HIS SEPARATE PROPERTY.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED TO FIND THAT PLAINTIFF MET HIS BURDEN OF PROOF TO SUPPORT THAT THE PROPERTY SITUATED AT 5275 OLD SPRINGFIELD ROAD WAS HIS SEPARATE PROPERTY.

{¶ 29} In her first and second assignments of error, Karina argues the trial court erred by finding the disputed property was a gift to Brian from his grandmother, Ada, that constituted his separate property. We disagree.

{¶ 30} Pursuant to R.C. 3105.171(B), in dividing property in a divorce proceeding, a trial court must first "determine what constitutes marital property and what constitutes separate property." As defined by R.C. 3105.171(A)(3)(a), marital property includes "all real and personal property that is currently owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage." Marital property, however, "does not include any separate property." R.C. 3105.171(A)(3)(b). Separate property is defined by R.C. 3105.171(A)(6)(a) and encompasses "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii).

{¶ 31} To establish an inter vivos gift, the following essential elements must be met: "(1) intent of the donor to make an immediate gift, (2) delivery of the property to the donee, and (3) acceptance of the gift by the donee." *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 12, citing *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21 (1936), paragraph one of the syllabus. "[T]he donee has the burden of showing by clear and convincing evidence that the donor intended an inter vivos gift." *Golick v. Golick*, 12th Dist. Clermont No. CA99-05-040, 2001 WL 1598290, *6 (Dec. 17, 2001). In other words, "[t]he party asserting that a gift was separate property bears the burden of showing an intention to make a separate gift—to benefit one spouse and exclude the other spouse from any rights and interest in the items as marital property." *Flynn v. Flynn*, 196 Ohio App.3d 93, 2011-Ohio-4714, ¶ 39 (12th Dist.), citing *Hook v. Hook*, 189 Ohio App.3d 440, 2010-Ohio-4165, ¶ 20 (6th Dist.). Clear and convincing evidence means that degree of proof that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 7.

{¶ 32} "A trial court's classification of property as marital or separate must be

supported by the manifest weight of the evidence." *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 11. The manifest weight of the evidence "concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 14, citing *Eastley* at ¶ 20. A reviewing court should be guided by the presumption in favor of the finder of fact, as the "trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 10.

{¶ 33} After a thorough review of the record, we find no error in the trial court's decision finding the disputed property was a gift to Brian from Ada, his grandmother, which constituted his separate property. This is true despite the fact that the record contains no "gift affidavit" or other documentary evidence explicitly stating that the disputed property was in fact a gift. Rather, just as the trial court found, the "evidence revealed through testimony that Ada Garrett intended the property to be a gift to her grandson, Brian Garrett." Ada even testified that the disputed property was "a gift to Brian." The trial court also properly determined that the "documents submitted as exhibits reflect virtually no involvement by [Karina] in the purchase of or financing of the property and strongly support [Brian's] assertion that the property was intended to be a gift for [him] and [him] alone." Therefore, because we find no error in the trial court's decision, Karina's first and second assignments of

error are without merit and overruled.

{¶ 34} Assignment of Error No. 3:

{¶ 35} THE TRIAL COURT ERRED TO FIND THAT, EVEN IF PLAINTIFF'S SEPARATE PROPERTY, APPELLANT WAS NOT ENTITLED TO APPRECIATION ON THE VALUE OF THE PROPERTY SITUATED AT 5275 OLD SPRINGFIELD ROAD.

{¶ 36} In her third assignment of error, Karina argues the trial court erred by finding she was not entitled to receive any appreciation on the value of the disputed property. We disagree.

{¶ 37} Pursuant to R.C. 3105.171(A)(3)(a)(iii), marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]" As noted by the Ohio Supreme Court, "[t]he plain language of R.C. 3105.17(A)(3)(a)(iii) unambiguously mandates that when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 400 (1998). Separate property, however, includes "[p]assive income and appreciation acquired from separate property by one spouse during the marriage[.]" R.C. 3105.171(A)(6)(a)(iii).

{¶ 38} Again, after a thorough review of the record, we find no error in the trial court's decision finding Karina was not entitled to any appreciation in value of the disputed property beyond the one-half portion of the loan payments made from the parties' marital funds. As the trial court found, "[a]n independent review of the transcript fairly reflects that any skilled labor that meaningfully was performed on the property resulting in any appreciation of the property was performed by [Brian's] parents." The trial court also found that any contributions to the work on the disputed property that Brian and Karina may have made "can be fairly characterized as minimal," thereby making it impossible to determine if their labor

- 13 -

resulted in any appreciation to the property, and if so, what percentage of the appreciation could be attributed to their labor "as opposed to [Brian's] parents which was clearly intended to be a gift to the Plaintiff as per their testimony." Therefore, while Karina testified that she contributed significantly to the construction of the home, the trial court clearly found this to be less than credible. As the magistrate even stated, Karina's testimony on these issues "lacks both credibility given the totality of the circumstances as well as corroboration." Accordingly, because we find no error in the trial court's decision, Karina's third assignment of error is likewise without merit and overruled.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE TRIAL COURT ERRED BY DENYING APPELLANT'S SECOND MOTION FOR CONTINUANCE TO OBTAIN A SEPARATE AND INDEPENDENT APPRAISAL ON THE REAL PROPERTY SITUATED AT 5275 OLD SPRINGFIELD ROAD.

{¶ 41} In her fourth assignment of error, Karina argues the trial court erred by denying her second request for a continuance in order to obtain a "separate and independent appraisal" of the disputed property. We disagree.

{¶ 42} The grant or denial of motion for a continuance is a matter entrusted to the broad and sound discretion of the trial court. *Black v. Black*, 12th Dist. Clinton No. CA2008-06-022, 2009-Ohio-92, ¶ 11. In turn, absent an abuse of discretion, a reviewing court will not disturb a trial court's decision denying such a motion. *Haynes v. Haynes*, 12th Dist. Clermont No. CA2008-01-003, 2008-Ohio-4963, ¶ 7. More than mere error of judgment, an abuse of discretion requires that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 43} In ruling on a motion to continue, the trial court balances its interest in controlling its own docket and the public's interest in an efficient judicial system with the possibility of prejudice to the defendant. *Tener v. Tener-Tucker*, 12th Dist. Warren No.

CA2004-05-061, 2005-Ohio-3892, ¶ 42. Factors the trial court may consider include "the length of the delay requested, prior requests for continuances, the inconvenience to the parties, witnesses, counsel, and the court, whether the movant contributed to the circumstances giving rise to the request for a continuance, and other relevant factors depending on the facts of the case." *Wilson v. Redman*, 12th Dist. Madison No. CA2003-09-033, 2004-Ohio-3910, ¶ 16.

{¶ 44} Here, after originally obtaining a continuance to conduct an appraisal of the property, Karina claims she "worked diligently to schedule times for the appraisal" but that Brian "refused to make the property available to the appraiser." The record, however, is devoid of any evidence to support this claim. Moreover, just as the trial court found:

> If the parties, specifically [Karina], were running into road blocks in their ability to obtain the appraisal which the Court had authorized it would have been appropriate some time before the day of the final hearing to raise the issue with the Court, preferably by motion. By waiting until the morning of the final divorce hearing to raise the issue, the Court finds that it is unreasonable on [Karina's] part to assert that the Court made a decision contrary to law or abused its discretion in overruling a Motion to Continue a hearing that had been set for a month.

{¶ 45} We agree with the trial court's decision as it relates to Karina's second request for a continuance. Simply stated, nothing about the trial court's decision denying Karina's motion for a continuance made on the day of trial was unreasonable, arbitrary, or unconscionable. Therefore, because we find no error in the trial court's decision, Karina's fourth assignment of error is without merit and overruled.

{¶ 46} Assignment of Error No. 5:

{¶ 47} THE TRIAL COURT, AT THE FINAL HEARING, ERRED TO FIND THAT AWARDING ONLY A MIRROR TO APPELLANT CONSTITUTED AN EQUITABLE DIVISION OF MARITAL PROPERTY.

{¶ 48} In her fifth assignment of error, Karina argues the trial court erred by only

awarding her with her grandmother's mirror. However, as the record reveals, the trial court actually awarded Karina with each and every item that she requested; namely, the washer and dryer, king size bed, theatre chairs, decorations, and storage tote containing awards she earned during high school. Therefore, because the trial court awarded Karina with all of the items she requested, Karina's fifth assignment of error is without merit and overruled.

{¶ 49} Assignment of Error No. 6:

{¶ 50} THE TRIAL COURT ERRED BY PERMITTING THE DIRECT COPYING AND PASTING OF THE PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW INTO THE MAGISTRATE'S DECISION.

{¶ 51} In her sixth assignment of error, Karina argues the trial court erred by allowing the magistrate to simply "copy and paste" from Brian's proposed findings of fact and conclusions of law without ever conducting its own independent analysis. However, just as the trial court found, this is nothing more than a "broad assumption" that is "unsupported by any evidence" within the record. We find no error with the trial court's decision.

{¶ 52} Moreover, even if we were to find some merit with Karina's claim, which we do not, "[a] court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law." *Janosek v. Janosek*, 8th Dist. Cuyahoga Nos. 86771 and 86777, 2007-Ohio-68, ¶ 149. The record clearly indicates the trial court conducted an "independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law" as required by Civ.R. 53(D)(4)(d). Therefore, Karina's sixth assignment of error is without merit and overruled.

{¶ 53} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.