[Cite as *In re M.G.*, 2019-Ohio-906.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE:

        M.G.,

ADJUDICATED DEPENDENT CHILD.

[MARCUS GANT - APPELLANT]

CASE NO. 1-18-54

**O P I N I O N**

Appeal from Allen County Common Pleas Court
Juvenile Division
Trial Court No. 2017-JG-34159

**Judgment Affirmed**

**Date of Decision:  March 18, 2019**

APPEARANCES:

    *F. Stephen Chamberlain* **for Appellant**

    *Sarah N. Newland* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Father-appellant Marcus Gant ("Marcus") appeals the judgment of the Juvenile Division of the Allen County Court of Common Pleas, arguing that the trial court erred by not awarding legal custody of his child, MG, to MG's paternal grandmother. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Both of MG's parents are currently incarcerated. Doc. 116. Her mother was sentenced to six years in prison for the crimes of conspiracy to trafficking in persons and promoting prostitution. Doc. 116. Her father, Marcus, was sentenced to four years in prison for conspiracy to trafficking in persons and promoting prostitution. Doc. 116. Consequently, on January 4, 2017, the trial court issued a shelter care order that placed MG with the Allen County Children Services Board ("ACCSB"). Doc. 1. The magistrate found that "it is not in the best interest of [MG] to remain in the Mother's custody, and the minor child cannot be placed in the Alleged Father's custody." Doc. 1. The magistrate further found that MG's half-sibling had already been removed from the custody of MG's mother and placed into the permanent custody of the ACCSB in 2016. Doc. 1.

{¶3} Subsequent to an adjudicatory hearing on February 13, 2017, the trial court found MG to be a dependent child. Doc. 39. The trial court then placed MG into the temporary custody of the ACCSB after a dispositional hearing on March

20, 2017. Doc. 43. On August 22, 2017, Marcus's mother, Gina Gant ("Gina"), filed a motion to intervene that was later denied on March 27, 2018. Doc. 52, 54, 107. On August 23, 2017, the ACCSB filed a motion requesting the modification of the prior order of temporary custody; the termination of the court ordered services of the ACCSB; and the award of legal custody to MG's foster parents, Amanda and Joshua Crouch ("the Crouches"), who have custody of MG's half-sibling. Doc. 56. Tr. 11. On January 8, 2018, Marcus filed a motion for legal custody. Doc. 81.

{¶4} Both of MG's parents requested that MG be placed with Gina. Doc. 116. On April 13, 2018, the Juvenile Division held an annual review hearing and addressed the issues raised by these motions. Tr. 1. Doc. 131. Following the hearing, the magistrate issued a decision that granted the ACCSB's motion to modify the prior dispositional order of the trial court; added the Crouches as parties to this action; and dismissed Marcus's motion for legal custody. Doc. 116. On June 22, 2018, Marcus filed his objections to the magistrate's decision, arguing that the foster parents were not more likely than Gina to honor the court-approved guidelines for parental visitation and that permanent placement with Gina was a legally secure option before the trial court. Doc. 119. On September 18, 2018, the trial court overruled Marcus's objections to the magistrate's decision. Doc. 130.

*Assignment of Error*

{¶5} Appellant filed his notice of appeal on September 28, 2018. Doc. 132. On appeal, Marcus raises the following assignment of error:

**The court below did not have sufficient evidence before it, on the record, to award legal custody of a child to a foster parent instead of the paternal grandmother.**

He requests that this Court reverse the trial court's decision and order the trial court to place MG in the legal custody of Gina.

*Legal Standard*

{¶6} The Ohio Revised Code defines "legal custody" as a

**legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. * * ***

R.C. 2151.011(B)(21). Thus, an award of legal custody does not divest a parent of his or her residual parental rights and does not "permanently foreclose[]" the possibility of a parent regaining legal custody in the future. *In re B.P.,* 3d Dist. Logan Nos. 8-15-07, 8-15-08, 2015-Ohio-5445, ¶ 19.

{¶7} For this reason, an "award of legal custody is 'not as drastic a remedy as permanent custody.'" *Id.* at ¶ 18, quoting *In re L.D.*, 10th Dist. No. 12AP-985, 2013-Ohio-3214, ¶ 7. "Therefore, the trial court's standard of review in legal custody proceedings is not clear and convincing evidence, as it is in permanent custody proceedings, but is merely a preponderance of the evidence." *In re Bixler*, 3d Dist. Seneca Nos. 13-05-41, 13-05-42, 2006-Ohio-3533, ¶ 24. "'Preponderance of the evidence' means evidence that is more probable, more persuasive, or of

-4-

greater probative value." *In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 33.

{¶8} R.C. 2151.353(A) governs the disposition of children determined to be abused, neglected, or dependent and reads, in its relevant part, as follows:

> **(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:**
>
> **\* \* \***
>
> **(2) Commit the child to the temporary custody of any of the following:**
>
> **(a) A public children services agency;**
>
> **\* \* \***
>
> **(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.  \* \* \*.**

R.C. 2151.353(A)(3).  After a court has issued a dispositional order pursuant to R.C. 2151.353(A), the court may later modify that order pursuant to R.C. 2151.353(F), which reads, in its relevant part, as follows:

> **(F)(1) The court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section \* \* \* of the Revised Code until the child attains the age of eighteen years \* \* \*.**
>
> **(2) Any public children services agency \* \* \* or any party \* \* \*, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued**

> **pursuant to division (A) of this section * * *.  The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules.  If applicable, the court shall comply with section 2151.42 of the Revised Code.**

R.C. 2151.353(F).   When "a court is asked to modify or terminate an order of disposition," the court is to consider what "is in the best interest of the child."  R.C. 2151.42(A).

> **Although there is no specific test or set of criteria that must be followed in determining what is in a child's best interest in a legal custody case, other appellate courts have held that the R.C. 2151.414(D) factors may be "instructive."** *See, e.g., In re Howland Children*, **5th Dist. Stark No.2015CA00113, 2015-Ohio-3862, ¶ 7;** *In re D.T.*, **8th Dist. Cuyahoga Nos. 100970, 100971, 2014-Ohio-4818, ¶ 20. These factors include: the interaction of the child with the child's parents, relatives and caregivers; the wishes of the child, as expressed directly by the child or through the child's GAL; the custodial history of the child; and the child's need for a legally secure permanent placement. R.C. 2151.414(D).**

*In re J.B.* at ¶ 34.   "The court is required to consider all other relevant circumstances in making its determination."  *In re K.S.*, 3d Dist. Seneca No. 13-15-11, 2015-Ohio-3814, ¶ 5.

{¶9} "A juvenile court has broad discretion in the disposition of an abused, neglected, or dependent child."  *In re C. W.,* 3d Dist. Wyandot No. 16-09-26, 2010-Ohio-2157, ¶ 10.  For this reason, an award of legal custody will not be reversed on appeal absent an abuse of discretion.  *Bixler* at ¶ 24.  An abuse of discretion is not merely an error of judgment.  *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339,

¶ 7 (3d Dist.). Rather, an abuse of discretion is present where the trial court's decision is unreasonable, arbitrary, or capricious. *Southern v. Scheu*, 3d Dist. Shelby No. 17-17-16, 2018-Ohio-1440, ¶ 10.

*Legal Analysis*

**{¶10}** In this case, the ACCSB considered placing MG with Gina. Doc. 116. However, the ACCSB determined that the best interests of the child would be served by leaving MG in the custody of the Crouches. Tr. 13-14. The Crouches had custody of MG's half-sibling and had been caring for MG since the time of her birth. Tr. 11. A caseworker for the ACCSB, Tiffany Geren ("Geren") testified at the hearing that MG was integrated into the Crouch home; that MG has not had any other placements since being with the Crouches; and that the Crouches provided a stable environment for MG. Tr. 13-14.

**{¶11}** Geren also testified that Gina indicated that she was willing to allow MG to have contact with Marcus after he was released from prison. Tr. 15. When Geren asked whether Gina "would be able to protect [MG]" from any harm that might come to her from Marcus, Gina said that "she felt * * * that the parents actually did nothing wrong and * * * blam[ed] the victim for * * * their incarceration." Tr. 15. Gina also did not see MG retaining a relationship with her half-sibling as important whereas the Crouches were willing for Gina to have visitation with Gina each week. Tr. 17, 22. Further, in a recorded conversation with Marcus at the prison, Gina stated repeatedly that she did not believe that she was

able to care for MG at that time. Tr. 16. In this call, Marcus told Gina that she would only have to care for MG until he was released from prison. Doc. 116. However, Geren testified that MG's mother had, in a previous case, reported Marcus for allowing "sex offenders" and active drug users into his home. Tr. 20.

{¶12} At the hearing, Gina testified that she was on disability. Tr. 100. However, Gina did not explain what her disability was and refused to explain how her disability affected her daily life. Tr. 100-101. She also denied that she had prior involvement with children services when she, in fact, was the alleged perpetrator in an emotional maltreatment case in 2003. Tr. 101. She later admitted that Marcus had gotten into trouble at the age of fourteen and had been removed from her custody. Tr. 102. Gina testified that she "didn't know how to deal with him." Tr. 102. She testified that Marcus was then placed in a group home and never again lived with her. Tr. 104. As a minor, Marcus had "sexually-related charges" against him. Tr. 106. Gina also claimed that Marcus was "coerced" into committing the crimes for which he was serving time in prison. Tr. 112.

{¶13} Based on the evidence presented at the hearing, the magistrate found that Gina would likely return MG to her parents upon their release from prison. Doc. 116. The magistrate determined that this would not be in the child's best interests because MG's mother has had all of her children removed from her custody and because MG's father has not complied with ACCSB's instructions that enjoined him from allowing sex offenders in his home. Doc. 116. The magistrate also found

-8-

that Gina did not believe Marcus had committed the crimes for which he was incarcerated and had been coerced into committing these offenses. Doc. 116.

{¶14} In this case, the trial court considered a variety of factors in reaching the decision that MG's best interests were served in this modification of the dispositional order. We do not find any indications in the record that the trial court abused its discretion in awarding legal custody to the Crouches. For these reasons, Marcus's sole assignment of error is overruled.

*Conclusion*

{¶15} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Juvenile Division of the Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**