[Cite as *Martin v. Martin*, 2015-Ohio-4803.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

RICK MARTIN,

    PLAINTIFF-APPELLEE,

    v.

JENNIFER MARTIN,

    DEFENDANT-APPELLANT.

CASE NO. 12-14-12

O P I N I O N

Appeal from Putnam County Common Pleas Court
Trial Court No. 2011-DIV-140

**Judgment Affirmed**

Date of Decision:  November 23, 2015

APPEARANCES:

    *N. Shannon Bartels* **for Appellant**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jennifer Martin ("Jennifer") brings this appeal from the judgment of the Court of Common Pleas of Putnam County denying her motion to modify parental rights and responsibilities. Jennifer claims that the trial court erred in finding that there had been no change of circumstances and determining that it would be in the best interest of the children to remain in the custody of plaintiff-appellee Rick Martin ("Rick"). For the reasons set forth below, the judgment is affirmed.

*Procedural Background*

{¶2} Rick and Jennifer were married on March 27, 1998. Doc. 1. During the marriage, five children were born: Makhayla (2002), Tyler (2004), Kaidan (2006), Emily (2007), and Ronald (2008). On June 27, 2011, Rick filed a complaint for divorce. The trial court granted the divorce on November 17, 2011. Doc. 22. The decree of divorce incorporated the separation agreement of the parties as part of its order. *Id*. Part of the agreement was a shared parenting plan. Pursuant to the plan, the children stayed with Rick from Friday until Tuesday and with Jennifer from Tuesday until Friday. *Id*. The agreement also provided for holiday parenting time and summer vacation time. *Id*. The agreement stated that the children would attend school in the Columbus Grove School District. *Id*. Additionally, the parties each waived child support due to the time spent with the children and the in kind contributions of each of them. *Id*.

{¶3} On August 23, 2013, Jennifer filed a motion to modify parental rights and responsibilities. Doc. 29. The motion was based upon the fact that Rick had moved to Lima and she has moved to Toledo, that Rick was unemployed, that Rick, his girlfriend, Ashley Morales ("Ashley"), and another couple were living along with the children in a two bedroom apartment, that Rick was allowing underage drinking parties to occur at his residence, and that he has allowed the children to get second degree sunburns while in North Carolina. *Id.* On September 12, 2013, Rick filed a motion for an emergency ex parte order requiring Jennifer to return the children to him from Toledo so they could go to school in the Columbus Grove School District. Doc. 33. The trial court granted Rick's motion on September 16, 2013. Doc. 39.

{¶4} On September 17, 2013, the trial court appointed Kim Affholder ("Affholder") as the Guardian Ad Litem of the children. Doc. 41. A hearing was held on October 31, 2013, on Jennifer's motion. Doc. 50. The parties entered an agreed entry which was approved by the trial court. *Id.* Pursuant to the agreement, Rick was designated the residential parent of the children. *Id.* Jennifer was granted companionship time at her mother's home "until such time as [Jennifer] either no longer lives with Eric Rivera [("Rivera")]or moves to a separate home of her own or until such time as [Rivera] is cleared via the Children Services investigation and [Affholder] has the opportunity to go and view the

home of the parties and make sure it is appropriate and [Affholder] approves the home as appropriate for the children." *Id*. at 2.

{¶5} On July 16, 2014, Jennifer filed a second motion to modify parental rights and responsibilities. Doc. 55. The basis for the motion included that Rick had "basically" relocated to North Carolina in May of 2014 without court permission, that he left the children with Ashley's sister, Sonya Morales ("Sonya") or Sonya's 13 year old daughter who was responsible for watching six other children while the adults were working, that he did not bring the children back to Ohio with him on his trips home, that he would not give Jennifer an address or telephone number of where they were staying, that Rick was refusing to give her visitations by not bringing the children back from North Carolina, by refusing to let the children talk to her on the phone, or by only bringing three of the children for the visits when he does come back to Ohio. Jennifer also claimed that Rick was neglecting the children's medical needs by failing to get their eyes checked and obtain the glasses required. Jennifer claimed that Rick was not caring for the children and getting them to school on time, that he is allowing his girlfriend to use corporal punishment on the children in opposition of the court order, and by allowing the children to ride in the car without wearing seatbelts, which resulted in injuries to the children when they were in an automobile accident. As a result of the above, Jennifer alleged that Rick's care has affected the mental health of the children negatively. On August 18, 2014, the trial court again appointed

Affholder as the guardian ad litem for the children. Doc. 70. On September 2, 2014, Rick notified the trial court of his intent to move to Fort Jennings, Ohio from his last known address in Bluffton, Ohio. Doc. 73. On October 2, 2014, Jennifer filed her notice of intent to relocate from Toledo, Ohio to Columbus Grove, Ohio. Doc. 79. A hearing was held on Jennifer's motion to modify parental rights and responsibilities on October 9, 2014. Doc. 86. The trial court ruled that there was no change of circumstances for the children and that remaining in the custody of Rick was in the children's best interests. *Id*. Jennifer appeals from this judgment and raises the following assignment of error.

> **The trial court erred in finding that no change in circumstance had occurred relative to the parties or their minor children since the issuance of the prior parenting decree and finding that it is in the best interests of the minor children that they remain in the care and custody of [Rick].**

{¶6} The sole compound assignment of error questions whether the trial court erred in denying the motion to modify the designation of the residential parent. The modification of a prior decree allocating parental rights and responsibilities is governed by R.C. 3109.04.

> **(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent**

**designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**

**(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.**

**(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.**

**(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

R.C. 3109.04. Jennifer alleges that the evidence showed that there was a change of circumstance in the children's living conditions and that it would be in the children's best interests to name her the residential parent.

*Change of Circumstances*

{¶7} The first question before the trial court was whether there was a change of circumstances since the last hearing date. *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, ¶17, 955 N.E.2d 453 (3d Dist). This finding must be made before the trial court determines what is in the best interest of the children. *Id*. Additionally, the change must be one of substance, not one that is slight or inconsequential. *Id*. at ¶18. The change must have a material effect on the child. *Id*.

{¶8} The last decree allocating parental rights and responsibilities, filed prior to the motion to modify that decree, was filed on January 17, 2014, and was an agreed entry. Doc. 50. At that time, Rick and the children resided with his mother. Tr. 21. The motion to modify that decree was filed on July 16, 2014, alleged that Rick had generally relocated the children to North Carolina without notice to the court, that he was leaving the children without adult supervision during the day, and that Rick would not provide Jennifer with an address or phone number where the children were staying. Jennifer also alleged that Rick was interfering with her visitation and that Ashley was using corporal punishment on the children although such punishment was prohibited by the prior decree.

{¶9} At the hearing on the motion before this court, Rick testified that he and the children had moved out of his mother's home after a disagreement with his mother concerning his relationship with Ashley. Tr. 23. He did not have housing at that time and bounced between staying with Sonya in North Carolina and living in a tent in a friend's backyard. Tr. 13-18. Once the children began school, they stayed with another of Ashley's sisters, Alyssa, during the week, while he and Ashley remained in the tent. Tr. 13, This testimony was substantiated by the testimony of Alyssa, who testified that she volunteered to take the children during the week because she did not think it was appropriate for them to be living in a tent without running water. Tr. 46. Alyssa also testified that the children hated living in the tent, came to her home wearing dirty clothing, and stayed with her

until they went to be with Jennifer on the weekend. Tr. 46-48. During the time the children were with Alyssa, Rick did not contribute anything towards their support and did not offer to pay for the school supplies that Alyssa bought for the children. Tr. 45-49.

{¶10} By the hearing date, Rick had begun a new job and had moved himself, Ashley, and the children into a two bedroom trailer that was placed on land owned by a relative. Tr. 7-11. This housing occurred in September of 2014, so occurred less than a month before the hearing.

{¶11} Rick also admitted that since the last hearing, he had not tended to the medical needs of the children. Since the last hearing, Rick had taken the children to a clinic in Lima, but not to their regular pediatrician. Tr. 31. Additionally, the children had not been to the dentist or eye doctor. Tr. 31. Although Tyler's glasses were broken, Rick had him wear Makhayla's glasses instead of getting them repaired or replacing them, and Makhayla went without glasses. Tr. 31. Thus, neither child was wearing the glasses prescribed to them by the doctor. Tr. 151.

{¶12} As set forth above, a change of circumstances exists if, since the last hearing, there has been a change in the life of the residential parent or the children that has negatively affected the children. The evidence in this case shows that there was a change of circumstances. Since the last hearing, the children had been moved out of their grandmother's home without having a new residence, spent the

summer in North Carolina living with Sonya, returned to Ohio to live in a tent, and then lived with Alyssa on school days while Rick stayed in a tent without running water. On the weekends, the children were either with Jennifer, or stayed in the tent with Rick and Ashley. During most of this time, Rick was unemployed and had little to no income. Although the homelessness and unemployment was remedied before the current hearing, the effect of the instability of being homeless had already occurred. Additionally, Rick admitted that all children had been without necessary medical care and that at least two of the children were negatively affected by this. The evidence clearly shows that the circumstances were different from the last hearing. Thus, the trial court erred by determining that there was no change of circumstances.

*Best Interests of the Children*

{¶13} Once a substantial change of circumstances that materially affects the children is found, the next issue for the trial court is to determine what is in the best interest of the children. *Id.*

> **(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:**
>
> **(a) The wishes of the child's parents regarding the child's care.**
>
> **(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and**

**responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d) The child's adjustment to the child's home, school, and community;**

**(e) The mental and physical health of all persons involved in the situation;**

**(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**\* \* \***

**(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

R.C. 3109.04. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

{¶14} The evidence in this case shows that although there were changes of circumstance, Rick had either remedied or was in the process of remedying the issues. Affholder indicated in her report that children's services had been to

Rick's new residence and "had no issue with the Martin children living" in that mobile home. Doc. 86. The Putnam County investigator indicated to Affholder that the agency would be providing beds for all of the children as well as a propane tank filled with propane. The report also indicated that the Putnam County investigator believed that the investigation into the allegation that Rivera had sexually abused a child by Children's Services in Allen and Lucas County showed that the abuse was "indicated", but that it could not be confirmed because Rivera denied the allegations and "was never able to meet with law enforcement." GAL Report, 4.

{¶15} Affholder testified that she had been unable to visit Jennifer's home in Toledo because Jennifer did not arrange it. As a result that home was never approved for the children to visit. Affholder continued to be concerned that although the case against Rivera against was closed, the conclusion of a case worker was that abuse was indicated and Jennifer was continuing her relationship with Rivera. Affholder also had concerns that Jennifer had no desire to remain in the area, but instead would soon choose to return to Toledo. Tr. 195. Affholder recommended that it would be in the best interest of the children to remain in Rick's custody. Doc. 86 at 7.

{¶16} Jennifer admitted at the hearing that she had willfully violated the trial court's orders on multiple occasions by taking the children to her home in Toledo, even though the home had not been approved by Affholder and the court

order required visits to occur at her mother's home. 131-134. Jennifer also admitted that the children had been in contact with Rivera even though the contact was forbidden by the court order. Tr. 132. When Jennifer went to North Carolina to pick up the children, Rivera went with her. Tr. 98. On cross-examination Jennifer admitted that she would prefer to work in Toledo rather than in Putnam County because there were better career opportunities there. Tr. 111. Although Jennifer had leased a home in Columbus Grove for one year, Affholder had not been able to have a home visit with Jennifer present. Tr. 142. Additionally, Jennifer was between jobs at the time of the hearing. Tr. 95-96

{¶17} In this case, the question of what is in the best interest of the children is of paramount consideration because both parties have violated court orders and acted in an immature manner that places their children in the middle of their disputes. Testimony was presented that both parents had interfered with the parental relationships by interfering with communication, taking the children out of town and/or state, failing to notify the other parent of new addresses, failing to tell the other parent where the children will be, and generally behaving disrespectfully and sometimes maliciously towards the other parent. This is clear from the fact that the trial court considered referring the matter to the juvenile court because neither home seemed to be suitable. However, the matter was reviewed by the guardian ad litem and she recommended that the children remain with Rick. Her report indicated Makhayla wished to live with Rick because of

Jennifer's relationship with Rivera. Tyler indicated to the guardian ad litem that he did not wish to choose between his parents and that he wishes for them to get back together. Tyler wanted a return to the shared parenting plan so that he could see more of Jennifer and did not wish to change schools. Kaiden also indicated that he wished to live with both parents equally and not to change schools. Emily indicated that she liked living in the trailer with Rick better than staying with Alyssa, but that she wanted to spend time with Jennifer in Columbus Grove. Ronald initially told the guardian ad litem that he wanted to live with Rick, but later changed his mind and said he would prefer to live with Jennifer if she remained in Columbus Grove.

{¶18} The trial court spoke with the children and determined that Makhayla wished to remain in the custody of Rick. Tyler indicated to the trial court that he wished to remain in the Columbus Grove School District. The trial court determined that the remaining children were too immature to express their wishes. The decision of the trial court indicates that it still had concerns regarding the contact between the children and Rivera and Jennifer's willingness to comply with court orders. Despite orders to the contrary, Jennifer continued to expose the children to a man who was accused of sexually abusing a minor without first getting clearance from the trial court. Jennifer also indicated that she did not wish to remain in Columbus Grove and would like to move the children to Toledo. At the time of the hearing, Rick was no longer homeless and was working with Job

and Family Services to obtain the necessary services for the children. Rick also testified that he was again employed and intended to remain in Columbus Grove. Considering all the testimony before it and the statutory factors set forth in R.C. 3109.04(F), the trial court determined that it would be in the best interest of the children to remain in the custody of Rick. This determination is supported by competent, credible evidence.

{¶19} Although this court found a substantial change of circumstances that materially affected the children, the error of the trial court in not finding a change of circumstance was harmless because the trial court did continue with the analysis to consider the best interests of the children. R.C. 3109.04(E)(1)(a) mandates that a court shall not modify a prior decree of parental rights and responsibilities without a finding that there is a change of circumstance and that the change of parental rights and responsibilities is in the best interests of the child. The trial court stated that it "also finds that it is in the best interests of the minor children that they remain in the care and custody of [Rick]." Doc. 86 at 4. Given the evidence before it, the trial court's decision is supported by the record and the trial court did not abuse its discretion by denying the motion to modify the parental rights and responsibilities.[1] The assignment of error is overruled.

---

[1] Since the trial court found that it was not in the best interests of the children to modify the parental rights and responsibilities at this time, the trial court did not need to address whether the benefits of the modification would outweigh the harm caused by the modification.

{¶20} Having found no error prejudicial to appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Putnam County is affirmed.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur in Judgment Only.**

**/hlo**