[Cite as *Southern v. Scheu*, 2018-Ohio-1440.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# SHELBY COUNTY

SHANICE M. SOUTHERN,

    PLAINTIFF-APPELLANT,

  v.

SCOTT R. SCHEU,

    DEFENDANT-APPELLEE.

CASE NO. 17-17-16

**O P I N I O N**

Appeal from Shelby County Common Pleas Court
Trial Court No. 2009SUP0016

**Judgment Affirmed**

**Date of Decision: April 16, 2018**

APPEARANCES:

    *Randy S. Kurek* **for Appellant**

    *William R. Zimmerman, Jr.* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Plaintiff-appellant Shanice M. Southern ("Southern") appeals the judgment of the Juvenile Division of the Shelby County Court of Common Pleas for (1) issuing an emergency ex parte temporary order of custody; (2) denying Southern's motion to transfer; and (3) granting the defendant-appellee, Scott R. Scheu ("Scheu"), custody of their minor child ("A.S."). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Southern and Scheu are the parents of A.S. Doc. 1. On February 3, 2010, the Juvenile Division of the Shelby County Court of Common Pleas issued an agreed entry governing the parental rights and responsibilities of Southern and Scheu. Doc. 21. On March 9, 2017, Scheu filed a petition for reallocation of parental rights and a motion for an emergency ex parte temporary order of custody. Doc. 23, 34. Accompanying the motion for a temporary order was an affidavit signed by Scheu that alleged A.S. was not safe in Southern's home due to the presence of Southern's live-in boyfriend, Abdul Kargbo ("Kargbo"). Doc. 33. Scheu's parents and sister also signed affidavits that alleged A.S. was not safe in Southern's custody. Doc. 33, 36. The trial court granted an ex parte temporary order of custody on March 10, 2017. Doc. 42.

{¶3} On March 21, 2017, Southern submitted a motion that requested this matter be transferred to Franklin County since the events alleged in the affidavits

submitted by Scheu occurred in Franklin County.  Doc. 23.  Southern's motion also argued for a venue transfer by alleging that Southern, Scheu, and A.S. lived in Franklin County.  Doc. 23.  Scheu opposed transfer on the grounds that he had, in fact, taken up residence in Shelby County.  Doc. 74.  On July 12, 2017, the trial court denied Southern's motion to transfer.  Doc. 77.

{¶4} On July 31, 2017, the trial court held a hearing on the motion to modify the allocation of parental rights.  Tr. 5.  At this hearing, Southern, Scheu, both of Scheu's parents, and the guardian ad litem—Stephen King ("King")—testified.  Tr. 7, 28, 34, 40, 57.  King testified that he had interviewed A.S., both of her parents, both of Scheu's parents, and Kargbo.  Tr. 7, 8, 12.  King testified that A.S. told him in an interview that Kargbo was a "bad person"; that Kargbo "beats her" if she says the word "Africa"; that Kargbo has punched her; and that Kargbo steals from people.  Tr. 10.  In her interview with King, A.S. also said that Kargbo had punched her, causing her to bleed.  Ex. A.  A.S. reported that she bled through dinner and that Kargbo did not give her any medical treatment.  Ex. A.

{¶5} King reported that Southern appears to have been aware of this abuse and did not address these issues.  Ex. A.  In fact, King expressed concern that Southern was hiding this abuse but said that Southern was otherwise a good mother.  Tr. 21.  King also detailed Kargbo's criminal history, which included theft, fraud, and forgery charges.  Tr. 13.  Kargbo had served nine months in prison in Ohio and eighteen months in prison in Wisconsin.  Tr. 13.  Ex. A.  King also testified that he

had reservations about Scheu having sole custody. Tr. 17. Scheu had been previously charged with child endangering after he left A.S. unattended for a time while he went into a casino. Tr. 17. Scheu had convictions for disorderly conduct, possession of marijuana, and a OVI.[1] Ex. A. In the end, King recommended that custody be awarded to Scheu as long as he is living with his parents. Tr. 18-19.

{¶6} Both of Scheu's parents testified that Southern was generally a capable mother but was not taking steps to protect A.S. from Kargbo's abuse. Tr. 30, 33-34. Both of them had concerns for A.S.'s safety because of Kargbo's continued presence in Southern's home and his physical abuse of A.S. Tr. 31, 33-34. Scheu similarly testified that Southern was generally a good mother but that he was concerned for A.S.'s safety since Kargbo moved in with Southern. Tr. 39-40. He also testified about the situation that gave rise to his charge of child endangerment. Tr. 41. He stated that he had left A.S. unattended in his car while he went inside the casino to cash some chips he had on hand. Tr. 42. He admitted that this decision was a poor judgment but testified that he has not left A.S. unattended in public since this incident in 2014. Tr. 41-42. Scheu also addressed an allegation that he had inappropriately touched a three-year-old. Tr. 42. He adamantly denied this accusation and noted that no legal action was taken after this accusation had been made. Tr. 42-43.

---

[1] This child endangerment charge was reduced to a charge of disorderly conduct. Doc. 86. Scheu was then convicted of disorderly conduct. Tr. 40. Ex. A.

{¶7} On cross examination, Southern testified that she met Kargbo in 2015 and was aware of his criminal past. Tr. 65-66. She was also aware that he had been to prison but claimed that he was now safe to be around. Tr. 66-67. She, however, testified that she was unaware that a capture warrant had been issued for Kargbo by the Immigration and Customs Enforcement Agency. Tr. 67. She denied that Kargbo physically abused A.S. but admitted that Kargbo would "discipline" A.S. on occasion. Tr. 68-69. Southern further testified that she did not believe that A.S.'s reports of abuse were accurate. Tr. 69.

{¶8} On August 30, 2017, the trial court issued a judgment entry that granted custody to Scheu. Doc. 86. Appellant filed her notice of appeal on September 28, 2017. Doc. 96. On appeal, appellant raises the following assignments of error:

### First Assignment of Error

**The trial court's decision to issue an Emergency Ex-Parte Temporary Order of Custody was contrary to law, and an abuse of discretion.**

### Second Assignment of Error

**The trial court's decision to deny Appellant's Motion to Transfer was contrary to law, and an abuse of discretion.**

### Third Assignment of Error

**The trial court's decision to grant Appellee custody of the minor child was an abuse of discretion, and contrary to law.**

*First Assignment of Error*

**{¶9}** Southern's first assignment of error contains two main arguments. First, she argues that the trial court had no legal authority to issue the ex parte temporary order of custody. Second, she argues that the issuance of this order was an abuse of discretion. For these reasons, she asserts that the subsequent judgment entry of August 30, 2017, should be reversed, returning Southern and Scheu to the arrangement that was agreed upon in 2010.

Legal Standard

**{¶10}** "The Modern Courts Amendment conferred authority on the Supreme Court of Ohio to promulgate rules relating to matters of procedure in courts of Ohio, while the right to establish the substantive law in Ohio remained with the legislative branch of government." *Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 2, citing Ohio Constitution, Article IV, Section 5(B). Rule 13(A) of the Ohio Rules of Juvenile Procedure reads as follows:

> **Pending hearing on a complaint, the court may make such temporary orders concerning the custody or care of a child who is the subject of the complaint as the child's interest and welfare may require.**

Juv.R. 13(A). Juv.R. 13(D) reads, in its relevant part, as follows:

> **[T]he court may proceed summarily and without notice under division (A), (B), or (C) of this rule, where it appears to the court that the interest and welfare of the child require that action be taken immediately.**

Juv.R. 13(D). Juv.R. 13(E) reads, in its relevant part, as follows:

> **Where the court has proceeded without notice under division (D) of this rule, it shall give notice of the action it has taken to the parties and any other affected person and provide them an opportunity for a hearing concerning the continuing effects of the action.**

Juv.R. 13(E). "The disposition that is in the best interest of the child is within the sound discretion of the trial court and will not be reversed upon appeal absent an abuse of discretion." *In re Haywood*, 3d Dist. Allen No. 1-02-97, 2003-Ohio-3518, ¶ 4. An abuse of discretion is not merely an error in judgment; rather, to constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or capricious. *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7 (3d Dist.).

Legal Analysis

{¶11} In her argument, Southern asserts that the trial court did not have legal authority to issue the ex parte temporary order of custody of March 10, 2017. We find this argument to be unpersuasive. In this case, the original complaint was filed with the trial court on September 21, 2009. Doc. 1. In filing a petition for reallocation of parental rights on March 10, 2017, Scheu reinvoked the continuing jurisdiction of the trial court over this matter, which had been initially invoked by the complaint that was filed in the trial court in 2009. Juv.R. 35(A). The hearing that was held by the trial court on the petition on July 31, 2017, was a hearing based on its continuing jurisdiction over this original complaint. Thus, the trial court had the legal authority to issue an ex parte temporary custody order pursuant to Juv.R.

13(A) and Juv.R. 13(D). This order was not, therefore, contrary to law as Southern argues.

{¶12} Further, we do not find that the issuance of this order was an abuse of discretion. Scheu submitted a motion for an ex-parte temporary order of custody on March 9, 2017. Doc. 35. This motion was accompanied by an affidavit signed by Scheu; an affidavit signed by both of Scheu's parents; an affidavit signed by Scheu's sister; a copy of Kargbo's arrest records; and three articles from various media outlets that reported stories about Kargbo's criminal acts. Doc. 33, 35, 36. The affidavits alleged that Kargbo had physically abused A.S. on several occasions by punching her in the face, dragging her down a flight of stairs, and pushing her. Doc. 33, 35, 36. The affidavits also alleged that Kargbo had left A.S. unattended in public and threatened her on multiple occasions. Doc. 33, 35, 36. Based on the facts in the record, we do not find that the trial court abused its discretion in issuing an ex parte temporary custody order. For this reason, Southern's first assignment of error is overruled.

*Second Assignment of Error*

{¶13} In her second assignment of error, Southern argues that the trial court abused its discretion in denying her motion to transfer this case. Southern alleges she, Scheu, and A.S. lived in Franklin County, which is also where the alleged abuse occurred. She further argues that the trial court in Shelby County has not had any

involvement in this case since the original custody order in 2010, making Shelby County an inappropriate location for this action.

Legal Standard

{¶14} "Venue is a 'procedural matter,' and it refers not to the power to hear a case but to the geographic location where a given case should be heard." *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 16. R.C. 2151.271 governs the transfer of juvenile cases and reads, in its relevant part, as follows:

> **[I]f the child resides in a county of the state and the proceeding is commenced in a juvenile court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence * * *. The proceeding shall be so transferred if other proceedings involving the child are pending in the juvenile court of the county of the child's residence.**

R.C. 2151.217. Similarly, Juv.R. 11(A) addresses the transfer of juvenile cases.

> **If the child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required.**

Juv.R. 11(A). "[A] child has the same residence or legal settlement as his parents, legal guardian of his person, or his custodian who stands in the relation of loco parentis." R.C. 2151.06. "[B]oth Juv.R. 11 and R.C. 2151.271 indicate that venue is within the discretion of the court." *In re Meyer*, 98 Ohio App.3d 189, 193, 648 N.E.2d 52, 54 (3d Dist. 1994).

Legal Analysis

{¶15} In this case, Southern did not establish that a proceeding was ongoing in another county where A.S. resided. Thus, the trial court was not required to transfer this case to Franklin County. The decision to transfer this case was, therefore, discretionary. In evaluating the trial court's decision, we find two facts significant. First, Scheu was seeking modification of an order that governed the custody and support of a minor child which had been issued by the Juvenile Division of the Shelby County Court of Common Pleas. Doc. 1. Thus, the trial court had continuing jurisdiction over this matter. *Lightner v. Perkins*, 3d Dist. Hardin No. 6-99-11, 2000 WL 924806, *1 (June 27, 2000). The trial court was, therefore, a venue that could be reasonably expected for a modification of the original custody order. Second, in response to Southern's motion to transfer, Scheu filed a motion that stated he resided in Shelby County. Doc. 60. Thus, this case was heard in a county in which A.S. resided. R.C. 2151.06. Further, we do not find facts in the record that indicate the trial court's decision to deny this motion to transfer was an abuse of discretion. For these reasons, the second assignment of error is overruled.

*Third Assignment of Error*

{¶16} In her third assignment of error, Southern argues that she should have been given custody over A.S. because the evidence in the record shows that this would be in the best interests of the child. She argues that the trial court's decision

to modify the allocation of parental rights and responsibilities was an abuse of discretion.

Legal Standard

{¶17} Under R.C. 3109.04, a trial court, in determining whether a modification of a decree allocating parental rights and responsibilities is appropriate, must go through a two-step analysis. First, the trial court must determine whether a change in circumstances has occurred since the prior decree was issued. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 33, 36. R.C. 3109.04(E)(1)(a). R.C. 3109.04(E)(1)(a) reads, in its relevant part, as follows:

> **(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**
>
> **\* \* \***
>
> **(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

R.C. 3109.04(E)(1)(a). A change in circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415,

-11-

418, 674 N.E.2d 1159 (1997). Further, this "change must have a material effect on the child." *Martin v. Martin*, 3d Dist. Putnam No. 12-14-12, 2015-Ohio-4803, ¶ 7.

**{¶18}** Second, if the trial court determines that a qualifying change in circumstances has occurred, the trial court must then determine whether a modification of the prior decree is in the best interests of the child. *Id*. at ¶ 13. The factors that a trial court must consider in this determination are listed in R.C. 3109.04(F)(1):

> **(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:**
>
> **(a) The wishes of the child's parents regarding the child's care;**
>
> **(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**
>
> **(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**
>
> **(d) The child's adjustment to the child's home, school, and community;**
>
> **(e) The mental and physical health of all persons involved in the situation;**
>
> **(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

R.C. 3109.04(F)(1). "Generally, when reviewing a ruling pertaining to the allocation of parental rights, the trial court is to be afforded great deference." *Carr v. Kaiser*, 3d Dist. Defiance No. 4-11-11, 2012-Ohio-2688, ¶ 25. "Thus, we will not reverse a child-custody decision that is supported by a substantial amount of

competent, credible evidence absent an abuse of discretion." *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453, ¶ 15 (3d Dist.).

Legal Analysis

**{¶19}** In this case, the trial court determinations that Southern's decision to live with Kargbo was a substantial change in circumstances. Doc. 86. In support of this determination, the trial court pointed to the credible allegations of abuse against Kargbo and Kargbo's criminal history. These allegations were communicated by A.S. to King, both of Scheu's parents, and Scheu. The trial court also pointed to the fact that A.S. expressed that she is fearful of Kargbo and that Southern has not given a good explanation as to why she has disregarded A.S.'s allegations. We find that the trial court's determination that a change of circumstances occurred was supported by competent, credible evidence and do not find evidence in the record that shows the trial court abused its discretion in reaching this conclusion.

**{¶20}** The trial court then considered all ten of the factors listed in R.C. 3109.04(F)(1) to determine whether a modification of the allocation of parental rights and responsibilities was in the best interests of A.S. Doc. 86. Two factors were of particular importance to the trial court's decision. The first factor was the "mental and physical health of all persons involved in the situation." R.C. 3109.04(F)(1)(e). The trial court noted that A.S. was fearful of Kargbo; that Kargbo seemed indifferent to A.S.'s well-being; that Southern was reluctant to address these

issues; and that A.S. was doing well living with her father and grandparents since issuance of the temporary custody order. Doc. 86. The second significant factor was the criminal histories of Scheu and Kargbo. R.C. 3109.04(F)(1)(h). After considering Scheu's history of substance abuse, Scheu's criminal record, and Kargbo's criminal record, the trial court found that Kargbo's propensity to have an adverse impact on others had not been rebutted while Scheu had answered questions about his poor judgment in the past. Doc. 86.

{¶21} After examining all of the factors listed in R.C. 3109.04(F)(1), the trial court determined that the recommendation of the guardian ad litem was in the best interest of the child and awarded custody to Scheu as long as Scheu was living with his parents. Doc. 86. Upon review of the record, we do not find any evidence that the trial court abused its discretion in reaching this determination. For these reasons, Southern's third assignment of error is overruled.

*Conclusion*

{¶22} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Juvenile Division of the Shelby County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**