**[Cite as *In re I.T.*, 2023-Ohio-3010.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

IN RE:

     I.T.,                             CASE NO. 13-23-05

**ADJUDGED DEPENDENT CHILD.**

                                       **O P I N I O N**

**[AARON T. - APPELLANT]**

IN RE:

     A.T.,                            CASE NO. 13-23-06

**ADJUDGED DEPENDENT CHILD.**

                                       **O P I N I O N**

**[AARON T. - APPELLANT]**

**Appeals from Seneca County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 22150099 and 22150100**

**Judgments Affirmed**

**Date of Decision: August 28, 2023**

**APPEARANCES:**

    *Bradley N. Jeckering and Dalia G. Safadi* for Appellant

    *Lisa A. Miller* for Appellee

**WALDICK, J.**

{¶1} Father-appellant, Aaron T. ("Aaron"), brings these appeals from the March 7, 2023 judgments of the Seneca County Common Pleas Court, Juvenile Division, awarding legal custody of his minor children, A.T. and I.T., to their mother, appellee Tiffany T. ("Tiffany"). For the reasons that follow we affirm the judgment of the trial court.

*Background*

{¶2} After Aaron and Tiffany divorced, they had shared parenting of their two children: A.T., born in May of 2007, and I.T., born in July of 2010. The parties operated under that plan until the instant case was initiated by the Seneca County Department of Job and Family Services ("SCDJFS").

{¶3} On December 15, 2021, SCDJFS filed complaints alleging that A.T. was a dependent and neglected child, and that I.T. was an abused, dependent and neglected child after two alleged incidents wherein Aaron inappropriately touched I.T. while his daughters were in his care. Regarding the first incident, it was alleged that one night Aaron had been drinking alcohol and he went to sleep in his bedroom. There was a bad storm that night and I.T. was scared so she went and slept in Aaron's bed with him. I.T. stated that at one point Aaron tried to put his hand down her pants but I.T. pulled away. I.T. went downstairs and contacted Tiffany, telling Tiffany that Aaron was "acting really weird" and that "[h]e tried to stick his hand

down [her] pants." (Ex. III.) Tiffany told I.T. that Aaron would be fine when he woke up in the morning, and that there was nothing to worry about. She told I.T. to go back to sleep and that there was no "hurricane" coming (because I.T. was scared of the storm). The next day, I.T. talked to Aaron about the incident and he said that he was only rubbing her back or stomach. I.T. was interviewed by SCDJFS and she opined that Aaron might have confused her for his girlfriend.

{¶4} The second incident occurred in December of 2021. At that time, Aaron was sleeping on the couch and I.T. laid down with him. I.T. claimed that Aaron put his arm around her, "rubbed her stomach and alongside her hips, and rubbed her chest." (Doc. No. 1). I.T. stated that Aaron was "making weird noises during this." (*Id.*) She believed Aaron had been drinking alcohol prior to this incident as well. A.T. was at Aaron's residence when both incidents allegedly occurred.

{¶5} The cases proceeded to adjudication on March 11, 2022, wherein the parties agreed to enter admissions that the children were dependent pursuant to R.C. 2151.04(C) and the remaining allegations were dismissed. By further agreement, the cases proceeded immediately to disposition, with the parties also agreeing that Tiffany would have temporary custody of the children. Meanwhile, SCDJFS would have protective supervision of the children and Aaron would exercise supervised parenting time. Notably, as part of the disposition it was ordered that Aaron would

not consume any alcoholic beverages during any period of contact or access with the children.

{¶6} On April 12, 2022, barely a month after disposition, Aaron filed a motion to modify visitation and the matter was set for a hearing. On June 3, 2022, Aaron filed a motion for *in camera* interviews of the children. This request was denied because the hearing was only on the issue of modification of visitation and because there was no indication that the children's wishes contradicted those expressed through the GAL who had been appointed for the children. After a hearing on the issue of modification of visitation, the trial court elected to continue the existing visitation schedule.

{¶7} Just days after the conclusion of the modification hearing, Aaron filed a motion for legal custody of the children. Subsequently, Tiffany filed a motion for legal custody of the children. A hearing on the motions for legal custody was held over two dates: September 8, 2022, and November 7, 2022.

{¶8} On November 9, 2022, the magistrate presiding over the case issued a decision summarizing the case's history and all of the testimony provided by each witness. The magistrate made factual findings and specifically found that the some witnesses were not credible. After reviewing the evidence, the magistrate recommended that Tiffany's motion for legal custody of the children be granted, and that Aaron's motion be denied.

{¶9} Aaron filed objections to the magistrate's decision, which were reviewed by the trial court and ultimately overruled. After conducting an independent review of the matter, the trial court denied Aaron's motion for legal custody, granted Tiffany's motion for legal custody, and designated Tiffany as legal custodian of the children. The trial court's final entry was filed March 7, 2023. It is from this judgment that Aaron appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court abused its discretion by failing to conduct an *in camera* interview of the dependent children as mandated by Ohio Revised Code § 3109.04(B).**

**Second Assignment of Error**

**The trial court abused its discretion by awarding legal custody of the children to their mother against the preponderance of the evidence.**

**Third Assignment of Error**

**A legal custody determination incident to an adjudication of abuse, neglect, or dependency warrants a requirement that courts consider the applicable statutory factors.**

*First Assignment of Error*

{¶10} In his first assignment of error, Aaron argues that the trial court abused its discretion by failing to hold an *in camera* interview of the children. He seems to contend that the trial court should have conducted this interview prior to the hearing

on the pending motions for legal custody even though his only request for an *in camera* interview of the children was prior to the June 6, 2022 hearing on Aaron's request for modification of visitation. We reject Aaron's argument for multiple reasons.

{¶11} First and foremost Aaron cites R.C. 3109.04(B) as support for his argument that an *in camera* interview should have been conducted of the children in this matter. However, R.C. 3109.04 concerns awarding parental rights and responsibilities in a "divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the child." This statutory section does not control these proceedings because this action is controlled by R.C. Chapter 2151 due to the fact it originated as a dependency case. Thus Aaron's reliance on R.C. 3109.04(B) is misplaced, and it does not *mandate* anything here as he suggests.

{¶12} Second, and notwithstanding the first point, Aaron had no motion for an *in camera* interview of the children pending at the time of the hearing on the motions for legal custody. Aaron had made a motion for an *in camera* hearing prior to the hearing for his motion for modification of visitation, but not prior to the final hearing, and even his earlier motion was rejected by the trial court. He never made a new motion for an *in camera* interview of the children prior to the legal custody

hearing. Where no motion was pending for an *in camera* interview, we can find no error by the trial court for failing to conduct such an interview.

{¶13} Third, as the trial court suggested in its entry overruling the objections to the magistrate's decision, "there can be little impact in any failure to interview the children as their interests were already represented by the Guardian *Ad Litem*" in this matter. (Doc. No. 149). At the final hearing and in his report, the GAL specifically indicated that the children wanted to spend more time with Aaron.

{¶14} Fourth, and finally, any wishes of the children, even if they were different from those represented by the GAL, are given no greater weight than any other element of a best interests analysis. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 57. Thus even if the trial court had interviewed the children, and the children expressed wishes that were not similar to those represented by the GAL, this factor alone would not override a holistic analysis of all the evidence, and we could find no error here.

{¶15} For all of these reasons, Aaron's first assignment of error is overruled.

*Second Assignment of Error*

{¶16} In Aaron's second assignment of error, he argues that the trial court abused its discretion by granting Tiffany's motion for legal custody and denying his motion for legal custody.

## Standard of Review

{¶17} On appeal, we review the grant or denial of a motion for legal custody under an abuse-of-discretion standard. *In re B.P.*, 3d Dist. Logan Nos. 8-15-07 and 8-15-08, 2015-Ohio-5445, ¶ 21. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d, 217, 219.

### *Legal Custody*

{¶18} Ohio's juvenile courts are statutory entities, and they are able to exercise only those powers that the General Assembly confers on them. *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 14. Revised Code Chapter 2151 grants a juvenile court exclusive original jurisdiction concerning a child alleged to be abused, neglected, or dependent. *In re A.D.*, 3d Dist. Seneca No. 13-22-12, 2023-Ohio-2442, ¶ 59.

{¶19} Following an adjudication of an abused, neglected, or dependent child, R.C. 2151.353(A) provides the juvenile court with certain dispositional alternatives for the child. Among the juvenile court's dispositional alternatives is granting legal custody of the child to either parent or to an individual who files a motion requesting legal custody. R.C. 2151.353(A)(3); *see also* Juv.R. 34(D).

{¶20} The Revised Code defines "[l]egal custody" to mean

> a legal status that vests in the custodian the right to have physical care
> and control of the child and to determine where and with whom the

child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court.

R.C. 2151.011(A)(21).

**{¶21}** Importantly, "the award of legal custody is 'not as drastic a remedy as permanent custody.'" *In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 32, quoting *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214, ¶ 7. Unlike granting permanent custody, the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17. Significantly, the parents can generally petition the court for a custody modification in the future. *In re L.D.* at ¶ 7. Thus, "a parent's right to regain custody is not permanently foreclosed." *In re B.P.*, 3d Dist. Logan Nos. 8-15-07, 8-15-08, 2015-Ohio-5445, at ¶ 19.

**{¶22}** The standard a juvenile court uses in making its determination in a legal-custody proceeding (by "preponderance of the evidence") is less onerous than a permanent-custody proceeding (by "clear and convincing evidence"). *In re B.P.* at ¶ 19. Preponderance of the evidence means evidence that is more probable, more persuasive, or of greater probative value. *In re M.G.*, 3d Dist. Allen No. 1-18-54,

2019-Ohio-906, ¶ 7. At a dispositional hearing involving a request for legal custody, the focus is on the best interest of the child.[1] *In re B.P.* at ¶ 19.

**{¶23}** However, Revised Code 2151.353(A)(3) does not list specific factors a court should consider in deciding what is in the child's best interest pursuant to the requested disposition of legal custody. *In re B.P.* at ¶ 20. Nevertheless, we have previously concluded that juvenile courts may be guided by the factors listed in R.C. 2151.414(D)(1) (the permanent-custody factors) or R.C. 3109.04(F)(1) (factors employed in private-custody disputes) since they may be instructive. *In re L.P.*, 3d Dist. Seneca Nos. 13-12-60 and 13-12-61, 2013-Ohio-2607, ¶ 22. In addition to the foregoing factors, the juvenile court must also liberally interpret and construe R.C. Chapter 2151 so as to effectuate the General Assembly's expressed purpose when considering which situation will best promote the child's "care, protection, and mental and physical development," understanding that the child should only be separated from his or her parents "when necessary for the child's welfare or in the interests of public safety." *In re C.W.*, 2010-Ohio-2157, at ¶ 11, citing R.C. 2151.01(A).

---

[1] Notably, the Supreme Court of Ohio has held that a finding of parental unfitness is not a prerequisite to a disposition of legal custody where a juvenile court is making a custody determination under R.C. 2151.353. *In re C.R.* at ¶ 21; *In re M.H.*, 3d Dist. Seneca Nos. 13-13-45 and 13-3-46, 2014-Ohio-1485, ¶ 15 ("[A] trial court is not required to make a separate 'unsuitability' finding at disposition, because an adjudicatory finding that a child is abused, neglected or dependent implicitly contains an unsuitability finding.").

Analysis

**{¶24}** At the final hearing, there was extensive testimony regarding whether Aaron had an issue with alcohol abuse. Aaron overdosed in 2018 on a combination of sleeping pills and alcohol. Tiffany testified that Aaron's alcohol use was a significant issue that impacted their relationship when they were together, and she testified that her children were worried about Aaron's alcohol use as well. In fact, Tiffany felt that the only reason the "improper touching" incidents happened was because Aaron was intoxicated and he was confused. I.T. also opined that Aaron was intoxicated and confused in her interview with SCDJFS about the first incident wherein Aaron tried to put his hand down her pants.

**{¶25}** Due to the concerns regarding alcohol, during the pendency of this case Aaron was evaluated twice for potential substance abuse issues: once by a counselor and once by a forensic psychologist. On both occasions Aaron was not diagnosed with an alcohol abuse issue. However, the forensic psychologist stated that Aaron had an "alcohol problem," it just was not significant enough to lead to a specific diagnosis. We note that the evaluations of Aaron were based largely on Aaron's self-reporting of the amount of alcohol he consumed.

**{¶26}** Whether Aaron had issues with alcohol was pervasive in this case. Testimony from essentially all of the witnesses, including Tiffany, indicated that there was not an issue with Aaron exercising unsupervised parenting time with the

children so long as Aaron was not consuming alcohol. Aaron and his paramour indicated that he had stopped consuming alcohol, but he had been observed at multiple functions with alcohol. Further, Tiffany, and some of the other witnesses, were concerned by the fact that Aaron had fought to be able to consume some alcohol while the children were with him back when the shared parenting plan was in place even though the original order stated that he should not consume alcohol. Aaron thus seemed utterly unwilling to give up drinking alcohol, though he told I.T. he would stop drinking alcohol the morning after the first inappropriate touching incident was alleged to have occurred.

{¶27} While a significant portion of the testimony was dedicated to Aaron's alcohol use and its impact, there was also a significant amount of testimony regarding the "improper touching" allegations that instituted this case, even though the children had already been adjudicated dependent. Police reports were entered into evidence and the interview that SCDJFS conducted with I.T. was entered into evidence. Despite all of this, there is no indication that criminal charges were ever filed against Aaron. Nevertheless, the allegations are troubling, regardless of whether the incidents were prompted by alcohol use or they were the result of a misunderstanding by Aaron.

{¶28} As to the children, by all accounts they were thriving with Tiffany as their temporary custodian. In fact, the GAL, the forensic psychologist, and

caseworkers from SCDJFS all recommended that Tiffany's motion for legal custody be granted. Meanwhile, Aaron was still exercising supervised visitation at the final hearing, though witnesses indicated he should have more parenting time with the children.

{¶29} When reviewing the evidence as a whole, there is scant evidence supporting Aaron's motion for legal custody. The evidence generally indicated that all of Aaron's supervised visits were going well with the children, but Aaron would have them neglect their homework at times.

{¶30} By contrast, the evidence affirmatively indicates that the children were thriving in Tiffany's temporary custody, and that while the children wanted to spend more time with Aaron, serious allegations had been made against him. The trial court determined that it was in the best interests of the children for Tiffany to be granted legal custody, and after reviewing the record, we do not find the trial court's determination to be unreasonable, arbitrary, or unconscionable. *See In re K.B.*, 3d Dist. Hancock No. 5-20-37, 5-20-38, 2021-Ohio-3273, ¶ 46 (holding that where the record does not demonstrate that the trial court's decision on legal custody was unreasonable, arbitrary or unconscionable, an affirmance is appropriate). Therefore, Aaron's second assignment of error is overruled.

*Third Assignment of Error*

**{¶31}** In his third assignment of error, Aaron argues that when a trial court makes a legal custody determination there should be a requirement that the trial court consider the "applicable statutory factors." More specifically, he argues that since there are no specific statutory factors that the legislature has codified to apply to a motion for legal custody, we should force trial courts to elaborate on the factors that may be relevant, such as those in R.C. 2151.414(D).[2]

**{¶32}** However, Aaron's argument is clearly one that should properly be directed to the legislature because he effectively wants us to codify legal requirements that have not been made by the legislature. As a court generally has no power to determine legislative policy, but rather power to interpret the effect of a legislative act, this argument is improper. *White v. Meyer*, 8th Dist. Cuyahoga 66 Ohio App. 549 (1940). Because the remedy requested by Aaron is not properly directed to this Court, his third assignment of error is overruled.[3]

---

[2] We have addressed, and rejected, arguments in the past that a trial court erred by referencing the best interest factors in R.C. 2151.414(D) and R.C. 3109.04(F)(1) when making a legal custody determination because the statutes are not mandatory in legal custody proceedings. *In re K.B.*, 3d Dist. Hancock No. 5-20-37, 5-20-38, 2021-Ohio-3273, ¶¶ 51-52.

[3] We note that the trial court did cite the various revised code provisions that are generally persuasive in determining motions for legal custody such as R.C. 2151.414(D) and R.C. 3109.04(F)(1). The trial court also explicitly stated it had considered these factors. Thus it seems that Aaron wants the trial court to cite the factors and make specific findings under each factor. While this might be a thorough policy, it is not mandated.

*Conclusion*

**{¶33}** Having found no error prejudicial to Aaron in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Seneca County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**