**[Cite as *In re A.B.*, 2025-Ohio-2298.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

IN RE:

    A.B.,

**ADJUDICATED DEPENDENT CHILD.**

**[AUSTIN B. - APPELLANT]**

CASE NO. 10-24-08

**OPINION AND
JUDGMENT ENTRY**

Appeal from Mercer County Common Pleas Court
Juvenile Division
Trial Court No. 3-2023-007

**Judgment Affirmed**

**Date of Decision:  June 30, 2025**

**APPEARANCES:**

    *Christopher Bazeley* **for Appellant**

    *Rebecca S. King-Newman* **for Appellee**

**WILLAMOWSKI, J.**

{**¶1**} Appellant Austin B. ("Father") brings this appeal from the judgment of the Court of Common Pleas of Mercer County, Juvenile Division, terminating his parental rights and awarding permanent custody of A.B. to the Mercer County Department of Job and Family Services ("the Agency"). On appeal Father claims that 1) the trial court's decision was not supported by the weight of the evidence and 2) the trial court should have awarded legal custody to the paternal grandmother. For the reasons set forth below, the judgment is affirmed.

{**¶2**} A.B. was born to Father and Lindsey Y. ("Mother") in 2022. On January 31, 2023, the Agency filed a complaint alleging that A.B. was a neglected and/or a dependent child. An adjudicatory hearing was held on March 29, 2023. The parties stipulated to the evidence and the trial court determined that A.B. was a dependent child. At the dispositional hearing on April 12, 2023, the trial court ordered that A.B. be placed in the temporary custody of the Agency. The Agency filed a plan requiring Father to 1) clean the home and maintain a clean and safe home; 2) participate in Help Me Grow services; 3) attend medical appointments for A.B.; 4) learn feeding cues and techniques for A.B.; 5) sign releases of information; 6) complete a drug and alcohol assessment and follow the recommendations; and 7) attend scheduled drug screenings as well as requested random screenings. The case plan noted that the foster mother was Mother's cousin.

{¶3} In October of 2023, Father and Mother ended their relationship and Father moved in with the paternal grandmother, Theresa W. ("Theresa"). Eventually, Father sought a modification of visitation to allow Theresa to visit with A.B. as well. On August 26, 2024, Father filed a motion for unsupervised visits with A.B. in Theresa's home. The trial court denied the motion "as this case is currently scheduled for a Permanent Custody Hearing October 25, 2024". Doc. 66. The Agency then filed a motion for permanent custody on September 3, 2024. The motion alleged that A.B. could not reasonably be placed with either parent within a reasonable time and that it would be in A.B.'s best interest to terminate the parental rights.[1] The hearing was scheduled for October 25, 2024, and the Agency sent its subpoenas.[2]

{¶4} On October 8, 2024, Father filed a motion to have Theresa granted legal custody of A.B. and notified the trial court that he no longer was residing with Theresa. The CASA report was filed on October 18, 2024. The CASA recommended that permanent custody of A.B. be granted to the Agency. On October 22, 2024, Mother decided to surrender her parental rights to A.B.

---

[1] Despite the fact that A.B. had been in the temporary custody of the Agency for over twenty-two consecutive months, the Agency did not move to terminate parental rights for this reason.

[2] Interestingly, the Agency subpoenaed the foster mother only to have the subpoena returned unserved as the last known address appeared to be "abandoned". The Agency then served the subpoena at the county prosecutor's office to keep the address confidential.

{¶5} The permanent custody hearing was held on October 25, 2024. Following the hearing, the trial court took the matter under advisement. On October 30, 2024, the trial court entered judgment terminating Father's parental rights, denying the motion to grant legal custody of A.B. to Theresa, and awarding permanent custody of A.B. to the Agency. Father appeals from this judgment.

### First Assignment of Error

**The trial court's decision awarding permanent custody of A.B. to the State is not supported by the weight of the evidence.**

### Second Assignment of Error

**The trial court erred when it denied [Father's] motion to award legal custody to his mother, [Theresa].**

*Manifest Weight of the Evidence*

{¶6} Father's first assignment of error alleges that the trial court's decision is against the manifest weight of the evidence. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 2003–Ohio–1269, ¶ 6 (3d Dist.). These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory

requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows:

(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

. . .

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section . . . the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies . . . for twelve or more months of a consecutive twenty-two month period . . . .

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414. "A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established." *In re Da.R.*, 2019-Ohio-2270, ¶ 9 (3d Dist.). The standard of review for a determination of legal custody is an abuse of discretion standard. *In re C.S.*, 2022-Ohio-2451 (3d Dist.).

{¶7} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re L.W.*, 2017-Ohio-4352 (3d Dist.). The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶8} Here, the trial court determined that A.B. had been in the temporary custody of the Agency for twelve or more months in a consecutive twenty-two month period. The record shows that A.B. was adjudicated to be a dependent child on March 29, 2023. The motion for permanent custody was filed on September 3, 2024, which was approximately eighteen months after the adjudication of dependency. Thus, the record supports the trial court's determination under R.C. 2151.414(B)(1)(a).[3]

{¶9} The next step is to determine whether the record supports the trial court's determination that the termination of parental rights is in the best interest of A.B. When considering the child's relationship with others, the testimony showed that although A.B. has a bond with Father and Theresa, he is also bonded with the foster parents. According to the case worker, A.B. is very happy and bonded with the caregivers and the foster siblings. The case worker noted that A.B. was "very happy, comfortable, and doing well" in the foster home. Although A.B. is bonded with Father, he is "not as carefree and comfortable" with Father as A.B. is with the foster parents. The case worker also testified that A.B. was more bonded and engaged with Theresa than with Father.

{¶10} The trial court noted that A.B. was not old enough to express his wishes. A.B. was only two years old at the time of the hearing. However, the CASA

---

[3] As noted earlier, this was not a basis requested by the Agency. The issue of whether the trial court should have used this basis was not raised on appeal and thus will not be addressed by this Court.

noted in her report that it would be in A.B.'s best interest to grant the Agency's motion for permanent custody.

**{¶11}** The custodial history of A.B. shows that the child was born in August of 2022. By November of 2022, A.B. was removed from the home. At no time during this case was A.B. not in the temporary custody of the Agency. This means that for all but approximately three months of A.B.'s life, the child has resided with the foster family.

**{¶12}** The case worker testified that A.B. was in need of a permanent placement. Although the caseworker admitted that there were other options that could achieve a "legally secure permanent placement for the child" besides permanent custody, she was recommending permanent custody because the foster family was not interested in legal custody, only adoption. In her opinion, it would be better for A.B. if Father did not have the possibility of attempting to regain custody at a later date. The social service administrator for the Agency testified that the Agency had no interest in changing the placement since A.B. was already in a kinship home. He testified that permanent custody is always better than legal custody because it establishes permanency. The administrator noted that there were no better alternatives in this case because the foster parents were only interested in adopting A.B., not in having legal custody.

{¶13} Finally, the trial court has to consider whether any of the factors pursuant to R.C. 2151.414(E)(7-11) apply. A review of the record shows that none of these apply to Father. No testimony was presented to show that Father has a criminal history regarding actions involving a child victim. R.C. 2151.414(E)(7). The testimony did not establish that father repeatedly withheld food or medical treatment when he had the means to supply it. R.C. 2151.414(E)(8). There was no testimony that indicated Father placed A.B. at risk of harm due to alcohol or drug abuse. R.C. 2151.414(E)(9). Father has not abandoned the child as the testimony was that he has regularly visited with A.B. and was even visiting multiple times a week. Although Father had missed some visits over the pendency of the case due to illness, he was present for the large majority of his visits. R.C. 2151.414(E)(10). No evidence was presented to show that Father had ever had his parental rights involuntarily terminated with respect to a sibling. R.C. 2151.414(E)(11).

{¶14} The trial court considered all of these factors. The trial court also noted that the parenting assessment showed that Father "would be in need of continuous support in order to effectively parent the child" and that Father had not followed through with the treatment for his mental health issues. Doc. 110. Based upon this, the trial court determined it would be in the best interest of A.B. to terminate Father's parental rights and grant the Agency's motion for permanent custody. A review of the record shows that the trial court's determinations are

supported by competent, credible evidence. The facts show by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established. Thus, the first assignment of error is overruled.

*Legal Custody*

{¶15} Father argues in his second assignment of error that the trial court erred by not awarding legal custody to Theresa. Review of a denial of a motion for legal custody is conducted under an abuse of discretion standard. *In re B.P.*, 2015-Ohio-5445, ¶ 21 (3d Dist.). An abuse of discretion is not merely an error in judgment, but a decision that is unreasonable, arbitrary, or unconscionable. *Southern v. Scheu*, 2018-Ohio-1440, ¶ 10 (3d Dist.). The judgment of the trial court regarding a request for legal custody will be affirmed if the preponderance of the evidence supports it. *In re I.T.*, 2023-Ohio-3010 (3d Dist.). Although no statute lists specific factors when considering whether to grant or deny a motion for legal custody, courts are generally guided by the same best interest factors set forth in R.C. 2151.414(D). *Id.* at ¶ 23.

{¶16} We discussed the evidence in regard to these factors in the first assignment of error. We note that the evidence showed that A.B. did have a bond with Theresa, but A.B. also had a bond with the foster family. The evidence showed that A.B. had spent the great majority of his life living with the foster family. Additionally, the foster mother was Mother's cousin, making this a family placement as well. The trial court determined that it would be in A.B.'s best interest

to remain in the foster home where A.B. was already settled rather than to completely change A.B.'s living situation to place the child with a different relative. Given the evidence before this Court, we cannot say that the trial court's decision to deny the motion for legal custody was unreasonable, arbitrary or unconscionable. Thus, the second assignment of error is overruled.

{¶17} Having found no error prejudicial to appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Mercer County, Juvenile Division is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

John R. Willamowski, Judge

William R. Zimmerman, Judge

Mark C. Miller, Judge

DATED:
/hls